ZACH COWAN, City Attorney                     SBN 96372
MARK J. ZEMBSCH, Deputy City Attorney         SBN 127901
MZembsch@ci.berkeley.ca.us
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
TEL.:  (510) 981-6998
FAX.:  (510) 981-6960

Attorneys for Defendant
CITY OF BERKELEY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY GARDNER,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF BERKELEY,<br><br>Defendant. | **NO.  C10-03410 EMC**<br><br>NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION, BY DEFENDANT CITY OF BERKELEY<br><br>DATE:  Dec. 23, 2011<br>TIME:  1:30 pm<br>CTRM:  C, 15th Floor |

<u>NOTICE OF MOTION</u>

NOTICE IS HEREBY GIVEN that on December 23, 2011, at 1:30 p.m., or as soon

thereafter as counsel may be heard by the above-entitled Court, located at 450 Golden Gate

Avenue, San Francisco, California, Courtroom C, Defendant City of Berkeley moves for

summary judgment, or in the alternative, for summary adjudication of claims.

Defendant City of Berkeley brings this motion on the grounds that there is no genuine

issue of material fact as to plaintiff's claims against it, plaintiff lacks the evidence needed to

raise a genuine issue of material fact, or that various statutes of limitations bar plaintiff's claims,

and therefore, it is entitled as a matter of law to summary judgment.

1        This motion is based upon this Notice of Motion, the accompanying Memorandum of

2    Points and Authorities, the Declarations of retired Police Chief Doug Hambleton, retired Captain

3    and Interim Police Chief Eric Gustafson, Captain Erik Upson, Lieutenant Matt Morizono,

4    Lieutenant Kevin Schofield, Director of Human Resources David Hodgkins and Mark J.

5    Zembsch (and the exhibits thereto), all pleadings and papers on file in this action, and upon such

6    others matters as may be presented to the Court at the time of the hearing.

7

8    Dated:  November 16, 2011        Respectfully submitted:

9                            ZACH COWAN, City Attorney
                        MARK J. ZEMBSCH, Deputy City Attorney

10

11                     By:  _____/s/_____
                        MARK J. ZEMBSCH

12                           Attorneys for Defendant
                        CITY OF BERKELEY

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEF. CITY OF BERKELEY'S NOTICE AND MPA IN SUPPORT OF SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION ~ NO. C10-03410 EMC

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   ISSUES TO BE DECIDED ................................................................................ 2

III.  STATEMENT OF FACTS ................................................................................. 3

    A.   Plaintiff Was Hired As A Berkeley Police Officer in 1995, After Failing To Disclose His Arrest For Battery ........................................................................ 3

    B.   After Clearing Probation, Plaintiff Had Performance and Discipline Problems.... 3

    C.   Plaintiff Applied For Disability Retirement in 2001, the City Approved and Plaintiff Retired On Disability in December 2001 ........................................... 5

    D.   Plaintiff Requested Reinstatement in 2002 ...................................................... 5

    E.   Plaintiff Unsuccessfully Sued The City in 2004 Claiming He Was Legally Entitled to Reinstatement .............................................................................. 6

    F.   Despite Court Ruling Against Him, Plaintiff Again Requested Mandatory Reinstatement in 2007, City Cited to Court Ruling and Advised He Must Apply  6

    G.   Plaintiff Finally Applied For A Position in 2009, Two Well-Respected Supervisors Opposed His Application Due to Their Prior Work With Plaintiff, and Plaintiff Was Denied Employment .......................................................... 7

        1.   In February 2009 Plaintiff Finally Applied For A Lateral Police Officer Position, At A Time When The City Was Hiring Very Few Police Officers ...... 7

        2.   BPD's Personnel & Training Unit (One Lieutenant and One Sergeant) Managed The Hiring Of All BPD Police Officers ......................................... 8

        3.   BPD's Personnel & Training Unit Declined To Advance Plaintiff's Application, Due To His Prior Work Performance and Attitude .................. 8

    H.   Plaintiff Filed His First-Ever Administrative Charge Claiming Discrimination On February 16, 2010 ..................................................................................... 11

i

# <u>TABLE OF CONTENTS</u>

IV.   ARGUMENT ................................................................................................ 11

    A.   Legal Standard for Summary Judgment ................................................ 11

    B.   The Great Majority of the Claims In Plaintiff's Complaint Are Time-Barred..... 12

        1.   Plaintiff's FEHA Causes of Action (Nos. 1-6) That Arose Prior to
            February 16, 2009 Are Time-Barred ....................................... 12

    C.   The Allegations In Plaintiff's 7th and 8th Causes of Action That Arose Prior to
       June 23, 2008 Are Time-Barred ....................................................... 13

    D.   The City Is Entitled To Summary Judgment On Plaintiff's First Cause Of Action
       For Disability and/or Medical Condition Discrimination
       -- FEHA (Gov. §12940) ................................................................ 14

        1.   Under The "*McDonnell Douglas* Shifting Burdens" Analysis, The City Is
            Entitled To Summary Judgment .............................................. 14

        2.   The City Has Established Legitimate, Non Discriminatory Business
            Reasons for Its Employment Decisions Regarding Plaintiff, and Plaintiff
            Fails to Create a Triable Issue Of Material Fact Regarding Pretext ........ 15

        3.   City Has Established Legitimate, Non Discriminatory Business Reasons
            For Its Failure To Hire Plaintiff, and Plaintiff Fails To Create A Triable
            Issue Of Material Fact Regarding Pretext .................................. 16

    E.   The City Is Entitled To Summary Judgment On Plaintiff's Second and Third
       Causes Of Action For Reasonable Accommodation and Failure To Engage In
       Interactive Process Violations -- FEHA (Gov. Code §12940) ............................ 17

        1.   Plaintiff Cannot Prevail On His "Failure To Attempt to Reasonably
            Accommodate" Cause of Action, As The City Did Not Make A
            "Conditional Job Offer" to Plaintiff ......................................... 17

        2.   Plaintiff Cannot Prevail On His "Failure To Engage in Interactive
            Process" Claim ..................................................................... 18

    F.   The City Is Entitled To Summary Judgment On Plaintiff's Fourth Cause Of
       Action For Retaliation in Violation of FEHA (Gov. Code §12940) .................... 18

# TABLE OF CONTENTS

G.   The City Is Entitled To Summary Judgment On Plaintiff's Fifth Cause Of Action For Harassment in Violation of FEHA (Gov. Code §12940)............................... 20

H.   The City Is Entitled To Summary Judgment On Plaintiff's Sixth Cause Of Action For Failure To Prevent Discrimination in Violation of FEHA (Gov. Code §12940(k)) ........................................................................ 22

I.   The City Is Entitled To Summary Judgment On Plaintiff's Seventh and Eighth Causes Of Action For Section 1983 and 1985 Claims and Violation of California Constitution, Article I, Section 7 ......................................................... 22

 1.   The City Afforded Plaintiff Any Due Process Rights He Was Entitled To .................................................................. 22

 2.   Plaintiff Cannot Bring 1983 or 1985 Claims For Rights Created By Anti- Discrimination Statutes ............................................ 23

 3.   The Eighth Cause of Action for Violation of Article I, Section 7 of the California Constitution Also Must Fail .................................... 23

V.   CONCLUSION .................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.* (1986)
477 U.S. 242 ................................................................................................ 11

*Berg. v. Cal. Horse Racing Bd.* (E.D. Cal. 2006) ........................................................ 13

*Cellini v. Harcourt Brace & Co.* (S.D. Cal. 1999)
51 F. Supp. 2d 1028 ...................................................................................... 13

*Celotex Corp. v. Catrett* (1986)
477 U.S. 317 ................................................................................................ 11

*Holbrook v. City of Alpharetta*
112 F.3d 1522 (11th Cir. 1997) .................................................................... 23

*McDonnell Douglas v. Green* (1973)
411 US 792 ........................................................................................... 14, 18

*Meritor Savings Bank v. Vinson* (1986)
477 U.S. 57 .................................................................................................. 21

*Morgan v. Humboldt Community School Dist.* (D.C. Nev. 1985)
623 F. Supp. 440 .......................................................................................... 23

*National R.R. Passenger Corp. v. Morgan* (2002)
536 U.S. 101; 122 S. Ct 2061 ............................................................ 12, 13, 19

*Sisay v. Greyhound Lines, Inc.* (D.D.C. 1998)
34 F. Supp. 2d 59 ........................................................................................ 19

*Stine v. Penn. State Police* (M.D. Pa. 2010) 2010 US Dist. LEXIS 116402 ................ 23

*Taylor v. Principal Financial Group, Inc.* (5th Cir. 1996)
93 F. 3d 155 ................................................................................................. 18

*Ward v. Coastal Carolina Health Care, P.A.* (E.D. NC 2009) ..................................... 23

**CALIFORNIA CASES**

*Begnal v. Canfield & Assocs.* (2000)
78 Cal.App.4[th] 66 ...................................................................................... 14

*Caldwell v. Paramount Unified School District* (1995)
41 Cal. App.4[th] 189 ................................................................................... 15

# TABLE OF AUTHORITIES (CON'T.)

**Page(s)**

**CALIFORNIA CASES**

*Dee v. Vintage Petroleum, Inc.* (2003)
   106 Cal. App. 4th 30 ......................................................................... 21

*Guz v. Bechtel National, Inc.* (2000)
   24 Cal.4th 317 ....................................................... 11, 14, 15, 16

*Hersant v. Department of Social Services* (1997)
   57 Cal.App.4th 997........................................................... 14, 16

*Holmes v. Petrovich Development Co. LLC* (2011)
   191 Cal. App. 4th 1047 ................................................................ 21

*Janken v. GM Hughes Electronics* (1996)
   46 Cal. App. 4th 55........................................................................ 21

*Jenkins v. County of Riverside* (2006)
   138 Cal.App.4th 593 ..................................................................... 14

*Krupnick v. Duke Energy Morro Bay* (2004)
   115 Cal. App. 4th 1026.................................................................. 13

*Le Bourgeois v. Fireplace Mfg.* (1998)
   68 Cal. App. 4th 1049 ........................................................... 15, 20

*Lyle v. Warner Brothers Television Productions* (2006)
   38 Cal.4th 264 ............................................................................... 21

*Martin v. Lockheed Missiles & Space Co.* (1994)
   29 Cal.App.4th 1718.............................................................. 14, 16

*McRae v. Department of Corrections & Rehabilitation* (2006)
   142 Cal. App. 4th 377 ................................................................... 21

*Morgan v. Regents of Univ. of Calif.* (2000)
   88 Cal. App. 4th 52........................................................................ 19

*Reno v. Baird* (1998)
   18 Cal. 4th 640 .............................................................................. 21

*Scotch v. Art Institute of California* (2009)
   173 Cal. App. 4th 986 ............................................................ 18, 22

*State Dept. of Health Servs. v. Superior Court* (2003)............................... 12
   31. Cal 4th 1026, 1040

# TABLE OF AUTHORITIES (CON'T.)

Page(s)

**CALIFORNIA CASES**

*Thompson v. City of Monrovia* (2010)
186 Cal. App. 4th 860 .................................................................. 12, 21

*Trujillo v. North County Transit Dist*. (1998)
63 Cal.App.4th 280 ............................................................................. 22

*University of Southern California v. Superior Court* (1990)
222 Cal. App. 3d 1028........................................................... 15, 20

*Valdez v. City of Los Angeles* (1991)
231 Cal. App. 3d 1043 ............................................................ 15, 19

*Yanowitz v. L'Oreal USA, Inc.* (2005)
36 Cal. 4th 1028 ........................................................................ 18, 19

**FEDERAL STATUTES AND RULES OF COURT**

42 U.S.C. §§ 1983 and 1985 ................................................. 3, 13, 22

Federal Rule of Civil Procedure 56(c)......................................... 11

**CALIFORNIA STATUTES**

Cal. Code of Civ. Proc. § 335.1............................................................ 13

Cal. Code of Civ. Proc., § 437c ....................................................... 11

Cal. Gov't Code § 12900 *et seq.* ................................................... 11

Cal. Gov't Code § 12940.......................................................passim

Cal. Gov't Code § 12940(e)(h)(k)(n) ....................................2, 18, 19, 22

Cal. Gov't Code § 12960(d) ......................................................... 12

Cal. Gov't Code § 21192 ..................................................... 6, 7, 19

Cal. Gov't Code § 21193 .......................................................... 6, 19

**OTHER AUTHORITIES**

California Constitution, Article I, § 7.......................................3, 13, 22, 23

# I.   INTRODUCTION

More than a decade ago (from 1995-2001), Plaintiff Timothy Gardner had a short career as a police officer with the Berkeley Police Department ("BPD").  That brief career was replete with a substantial number of Internal Affairs Bureau ("IAB") complaints, including eight separate complaints for use of excessive force.  During Plaintiff's last few months on the street in 2000, he had two complaints sustained against him, including one where the Chief of Police concluded he had used excessive force and he was placed on BPD's "early warning system" for the many complaints against him.  Soon thereafter, Plaintiff was injured on the job and eventually sought a disability retirement.  In 2001, the City approved Plaintiff's application for disability retirement and Plaintiff retired and immediately began receiving disability retirement benefits.  In 2003, Plaintiff was medically cleared to physically perform the duties of a police officer and sought reinstatement with BPD.  The former Police Chief did not reinstate Plaintiff, due to his prior performance and discipline problems.

Thereafter, Plaintiff brought a writ of mandate against the City, specifically alleging that under the California Government Code, the City was required to reinstate him to his former position.  In 2004, the Superior Court of Alameda County denied the Petition; Plaintiff did not appeal that judgment.  In 2007, Plaintiff wrote to the City Manager, claiming once again that the City was required to reinstate him pursuant to the same provisions of the California Government Code.  The City responded that because the Superior Court in 2004 had determined that Plaintiff was not entitled to mandatory reinstatement, he must apply for an open position.

In 2009, Plaintiff finally did apply for a Lateral Police Officer position with BPD, but was denied.  The reason for the denial was simple: by 2009, two former co-workers of Plaintiff had been promoted to key positions in BPD.  These extremely well-respected supervisors (one of whom occupied the key position that has great discretion in determining which candidates move forward in the hiring process) were adamantly opposed to Plaintiff's re-hire.  Both supervisors independently responded to the decision-maker (the Personnel & Training Lieutenant) that Plaintiff should not be re-hired, using terms describing Plaintiff as "**a real problem in the street**," "**very argumentative and aggressive**" with the public and co-workers, a "**malcontent**"

and "**angry and bitter**".  Plaintiff was not hired, and in February 2010, he filed his first-ever administrative charge claiming disability discrimination, harassment, retaliation and related complaints.

The City is entitled to summary judgment as a matter of law, for two main reasons.  First, the vast majority of the allegations in Plaintiff's Complaint are time-barred, as Plaintiff last worked for the City in 2001, and he did not file an administrative charge until 2010.  Second, the City's decision to not hire Plaintiff was solely due to the blunt accounts by two former colleagues of Plaintiff, who provided a vivid description of Plaintiff's prior performance problems.

## II.     ISSUES TO BE DECIDED

Plaintiff's Complaint ("Complaint"), attached to the Declaration of Mark J. Zembsch (hereafter "Zembsch Decl."), Exh. C, contains the below-listed eight causes of action.  The only remaining defendant is the City of Berkeley ("the City"), named as a defendant in all eight.  The issues to be decided are whether the City should be dismissed from all of these causes of action.

| 1st Cause of Action | California Government Code Section 12940 – Disability and/or Medical Condition Discrimination | Fails for lack of evidence of disability discrimination, and time-barred by one-year statute of limitations |
| --- | --- | --- |
| 2nd Cause of Action | California Government Code Section 12940 – Reasonable Accommodation Violations | Fails under the undisputed facts, and time-barred by one-year statute of limitations |
| 3rd Cause of Action | California Government Code Section 12940 – Failure to Engage in Good Faith Interactive Process | Fails under the undisputed facts, and time-barred by one-year statute of limitations |
| 4th Cause of Action | California Government Code Section 12940 – Retaliation | Fails under the undisputed facts, and time-barred by one-year statute of limitations |
| 5th Cause of Action | California Government Code Section 12940 – Harassment | Fails for lack of evidence of harassment, and time-barred by one-year statute of limitations |
| 6th Cause of Action | California Government Code Section 12940(k) – Failure to Prevent Discrimination | Fails under the undisputed facts, and time-barred by one-year statute of limitations |

DEF. CITY OF BERKELEY'S NOTICE AND MPA IN SUPPORT OF SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION ~ NO. C10-03410 EMC

| 7th Cause of Action | 42 U.S.C. Sections 1983 and 1985 claims | Fails for lack of evidence of due process or other statutory violations, cannot be brought along with employment discrimination claims, and time-barred by two-year statute of limitations |
|---|---|---|
| 8th Cause of Action | Violation of California Constitution, Article I, section 7 | Fails for lack of evidence of due process violations, and time-barred by two-year statute of limitations |

## III.    STATEMENT OF FACTS

### A.    Plaintiff Was Hired As A Berkeley Police Officer in 1995, After Failing To Disclose His Arrest For Battery

Plaintiff was hired as a Police Officer Recruit on July 25, 1995. [Deposition of Plaintiff ("Pltf depo"), pp. 34:17-35:14 and Depo Exh. 2, attached as Exh. A to Zembsch Decl.] The City learned for the first time during this lawsuit that Plaintiff failed to disclose in his background investigation that he had been arrested for battery for his role in a fight, and that to resolve it, he had agreed to a court diversion program, including doing community service. [Pltf depo pp. 26:19-23 and 28:4-17.] Plaintiff cleared probation and became a permanent employee in the classification of Police Officer on December 17, 1997. [COB 133, attached as Exh. D to Zembsch Decl.]

### B.    After Clearing Probation, Plaintiff Had Performance and Discipline Problems

After clearing probation in December 1997, Plaintiff only worked as a police officer for three years, until January 2001 when he went out on injury. [Hodgkins Decl. ¶ 5; Hambleton Decl. ¶ 6.] During that three-year period, Plaintiff was the subject of 14 complaint investigations by BPD's Internal Affairs Bureau ("IAB"), together with the 5 he had received before that time, Plaintiff was investigated a total of 19 times during his career of five plus years. [Zembsch Decl., ¶ 2; Pltf's depo and Depo Exhs. 21-39.] Eight of those complaints alleged that Plaintiff had used excessive force. [*Id.*] In total, Plaintiff had four IAB complaints sustained against him in his career, including one for use of excessive force. [*Id.,* Pltf depo Exhs. 22, 28, 34 and 39.]

1    Future Chief of Police Doug Hambleton, as Administrative Captain, was the Chair of

2    BPD's Board of Review for the last 7 of the IAB complaints against Plaintiff. [Hambleton Decl.

3    ¶ 4.] Those 7 IAB complaints that then-Captain Hambleton oversaw were alleged during the last

4    five months Plaintiff worked as a police officer. [*Id.* ¶ ¶ 4 and 6.] According to Hambleton:

5    "That is an extremely high number of complaints brought against a single officer during such a

6    short period, and there are very few, if any, other BPD officers with as many IAB complaints in

7    such a short period of time." [*Id.* at 4.] Three of those complaints alleged that Plaintiff had

8    used excessive force. During that brief time, the Board sustained two of the seven complaints,

9    including one for excessive force. [*Id.*; and Exh. E Zembsch Decl.]

10    As a result of the sustained excessive force complaint, in early 2001 then Chief of Police

11    Dash Butler issued a written reprimand to Plaintiff that was also copied to future Chief

12    Hambleton. [*Id.* at ¶ 5; and Exh. B to Hambleton Decl.] Hambleton declared: "Chief Butler

13    accurately summarized the findings of the Board of Review in the written reprimand when he

14    concluded '…I cannot condone the use of the baton after the subject lowered his arms.'" [*Id.*]

15    Earlier in 2000, Plaintiff had another IAB complaint sustained against him, resulting in Chief

16    Butler writing Plaintiff advising him of his performance problems. [*Id., Exh. C.*] In addition to

17    Plaintiff receiving the sustained IAB complaints, the Written Reprimand and Advice Letter

18    during this period in 2000, due to those complaints he was also placed on BPD's "Early Warning

19    System." [*Id.*, Exh. D.] As a result of the high number of IAB complaints, the two sustained

20    complaints (especially the sustained use of excessive force complaint), and placement on the

21    Early Warning System, future Chief Hambleton's overall impression of Plaintiff's work

22    performance at that time was "not favorable" and Plaintiff was regarded "as a marginal officer."

23    [*Id.*] A few months after being placed on BPD's "Early Warning System" (and while the

24    sustained excessive force complaint for repeated baton strikes was still being investigated),

25    Plaintiff left on an injury and never returned to work. [Hodgkins Decl. at ¶ 5.]

26    //

27    //

28

DEF. CITY OF BERKELEY'S NOTICE AND MPA IN SUPPORT OF SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION ~ NO. C10-03410 EMC

1

**C.      Plaintiff Applied For Disability Retirement in 2001, the City Approved and Plaintiff Retired On Disability in December 2001**

2          From November 10, 2000 through December 3, 2001, Plaintiff did not perform the duties

3    of a Police Officer, due to injury (except for two weeks in late 2000 and early 2001).

4    [Hambleton Decl. at ¶ 5; Hodgkins Decl. at ¶ 5.]  For the majority of those 13 months, Plaintiff

5    did not report to work at all, and he received full salary under the City's workers' compensation

6    benefits.  [Hodgkins Decl. at ¶ 5.]   In late 2001, Plaintiff applied for disability retirement with

7    CalPERS.  [Pltf depo at 38:3-16.]   David Hodgkins oversaw the City's internal process for

8    Plaintiff's CalPERS' disability retirement application, and the City approved Plaintiff's

9    application.  [Pltf depo 38:17-39:21 and Exh. 5.]  On December 3, 2001, Plaintiff submitted his

10   letter of resignation to BPD and was separated effective that date.  [Pltf depo pp. 39:16-40:20

11   and Exh. 3.]

12

13   **D.      Plaintiff Requested Reinstatement in 2002**

14          Without having been medically cleared to perform the duties of a police officer, on

15   August 5, 2002, Plaintiff wrote to then-Chief Roy Meisner requesting reinstatement to his

16   former position.  [Zembsch Decl., Exh. H.]  Even though Plaintiff had yet to be medically

17   cleared, on August 19, 2002, Plaintiff was placed on an eligibility list for patrol officer per the

18   Memorandum of Understanding ("MOU") and was advised that his eligibility for reinstatement

19   would expire on December 3, 2003, two years after his resignation.  [Zembsch Decl., Exh. F.]

20   On April 6, 2003, Plaintiff's doctor, for the first time, medically cleared Plaintiff to perform the

21   duties of a police officer.  [Pltf  depo 47:18-48:1; Exh 7.]  Three days after receiving that

22   medical clearance, Plaintiff's then-counsel wrote Chief Meisner demanding that Plaintiff be

23   reinstated.  [Zembsch Decl., Exh. I.]  The City responded on April 28, 2003, via letter from

24   Deputy City Attorney Sarah Reynoso, that Chief Meisner was exercising his discretion regarding

25   reinstatement under the MOU and was not interested in reinstating Plaintiff.  [Zembsch Decl.,

26   Exh. J.]

27   //

28   //

DEF. CITY OF BERKELEY'S NOTICE AND MPA IN SUPPORT OF SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION ~ NO. C10-03410 EMC

**E.      Plaintiff Unsuccessfully Sued The City in 2004 Claiming He Was Legally Entitled to Reinstatement**

On October 23, 2003, Plaintiff brought a Writ Of Mandate in Superior Court of California (Alameda County) specifically claiming that California Government Code sections 21192 and 21193 mandated the City to reinstate Plaintiff to his former position.  [Petition, p. 4:13-5:11, attached as Exh. G to Zembsch Decl.]  The City answered the Writ, specifically asserting that "Police Chief Meisner has exercised his discretion under [MOU] Section 39 and determined **based on Gardner's prior work performance and disciplinary record** that Gardner is not a suitable candidate for reinstatement with the Berkeley Police Department.  For these reasons, Chief Meisner has not taken any action with respect to Gardner's request for reinstatement."  [City Answer at 3:3-7, attached as Exh. K to Zembsch Decl., emphasis added.]  After submitting its Answer, the City opposed the Petition and provided a declaration from Police Chief Roy Meisner:  "I decided not to offer [Gardner] re-employment as a patrol officer because in reviewing his work history and complaint record, I did not feel he was the best-qualified individual."  Meisner Decl. ¶ 4, attached as Exh. N to Zembsch Decl.  The City also submitted a lengthy argument on the inapplicability of Government Code sections 21192 and 21193 to Plaintiff's situation, when the agency does not offer reinstatement.  *See,* City MPA, pp. 3:25-6:13, attached as Exh. M to Zembsch Decl.

On March 16, 2004, the Superior Court of Alameda County denied the Petition.  [Pltf depo Exh. 8.]  Plaintiff did not appeal that judgment.  [Pltf depo p. 57:21-58:14.]

**F.      Despite Court Ruling Against Him, Plaintiff Again Requested Mandatory Reinstatement in 2007, City Cited to Court Ruling and Advised He Must Apply**

On June 6, 2007, Plaintiff began a letter-writing campaign to the City Manager and Director of Human Resources and "cc'd" the Mayor and City Councilmembers, asserting that he was entitled to be reinstated as a Berkeley Police Officer.  [Hodgkins Decl. ¶ 2, Exh. A (all letters between Plaintiff and the City in 2007-08).]  Human Resources Director David Hodgkins sought counsel from the City Attorney's Office, and on September 5, 2007, responded via letter to Plaintiff that based on the Court's 2004 ruling, his reinstatement rights were governed by the City's personnel system and the MOU.  Because the reinstatement rights under the MOU had

6

1   long-since expired, Mr. Hodgkins advised Plaintiff "**if you wish to be considered for**

2   **employment with the City of Berkeley Police Department you will need to go through a**

3   **new recruitment and examination process."** [*Id.*, emphasis added.]  On October 1, 2007,

4   Plaintiff responded to Mr. Hodgkins' letter by stating that he believed he was entitled to

5   reinstatement because of "my reading" of California Government Code section 21192, despite

6   the 2004 ruling against him on that same assertion.  [*Id.*]

7          On July 25, 2008, Plaintiff again wrote the City Manager, and again asserted that the

8   City must reinstate him in order to comply with Government Code section 21192.  [*Id.*]  Mr.

9   Hodgkins again sought counsel from the City Attorney's Office to prepare his response.

10  [Hodgkins Decl. ¶ 3.]  On August 11, 2008, Mr. Hodgkins responded with the last letter from the

11  City to Plaintiff regarding his request.  [Hodgkins Decl. ¶¶ 2-4 and Exh. A; Pltf depo pp. 92:15-

12  93:8.]  Mr. Hodgkins advised Plaintiff that Plaintiff's contention that he was entitled to reinstate-

13  ment per Government Code section 21192 "was fully litigated and the issue of whether the City

14  had a duty to reinstate you under Government Code sections 21192 and 21193 was litigated.

15  Judge Steven Brick ruled against you and in favor of the City and determined that the City had

16  no mandatory duty to reinstate you.  …Since the court determined in *Gardner v. City of Berkeley*

17  that the City does not have any legal duty to offer you reinstatement, the City does not intend to

18  take any action on your request for reinstatement."  [Hodgkins Decl. ¶ 2, Exh. A.]

19

20  **G.     Plaintiff Finally Applied For A Position in 2009, Two Well-Respected Supervisors**
        **Opposed His Application Due to Their Prior Work With Plaintiff, and Plaintiff Was**

21      **Denied Employment**

22          **1.     In February 2009 Plaintiff Finally Applied For A Lateral Police Officer**
                 **Position, At A Time When The City Was Hiring Very Few Police Officers**

23

24          In February 2009, Plaintiff finally submitted an application for employment with the City

25  of Berkeley for the first time since his resignation.  [Pltf depo p. 77:1-12.]  After a review of his

26  employment application and Oral Board interview, Plaintiff was placed on a certified Eligibility

27  List, valid from April 9, 2009-April 9, 2010.  [Pltf depo p. 90:7-13 and Exh. 14.]  At that time,

28  the City was undergoing severe budget problems, resulting in very few positions being filled for

                                            7

the period July 2008-May 2010.  [Hambleton Decl. ¶¶ 9-10; Gustafson Decl. ¶¶ 3-4; Morizono Decl. ¶ 7.]

> ### 2. BPD's Personnel & Training Unit (One Lieutenant and One Sergeant) Managed The Hiring Of All BPD Police Officers

Once Human Resources certifies an Eligibility List, all hiring of BPD Police Officers, either Police Officer Recruit or Lateral Police Officer, is done through BPD's Personnel & Training Unit ("P&T").  [See Gustafson Decl. ¶ 2 for a detailed account of the P&T hiring process.]

During the time Plaintiff was on the Eligibility List, BPD's process was that the P&T Sergeant received an Eligibility List from the City's Human Resources Department that had been certified as compliant with the City's strict adherence to its civil service rules.  [Gustafson Decl. ¶ 2]  During the entire time that Chief Hambleton was the Chief of Police, the P&T Sergeant had discretion to determine which candidates, if any, to move forward in the hiring process.  [*Id*.; Morizono Decl. ¶ 3; Schofield Decl. ¶ 3; Deposition of David Frankel pp. 46:22-47:5, attached as Exh. B to Zembsch Decl.]  For candidates that are already known to BPD, because of prior work with BPD, or work at a nearby police agency, the P&T Sergeant typically will make contact with individuals who are familiar with the candidate's work performance.  [Gustafson Decl. ¶ 2; Morizono Decl. ¶ 3; Schofield Decl. ¶ 3.]

At the time that Plaintiff's candidacy was being evaluated by P&T staff, P& T was staffed by Sergeant (now Lieutenant) Kevin Schofield and Lieutenant Matt Morizono, both of whom were extremely well-regarded supervisors by BPD management.  [Gustafson Decl. ¶ 2.]

> ### 3. BPD's Personnel & Training Unit Declined To Advance Plaintiff's Application, Due To His Prior Work Performance and Attitude

> #### a. P&T Sergeant Schofield Was Adamantly Opposed To Hiring Plaintiff

When then-Sergeant Schofield learned that Plaintiff had been placed on an Eligibility List for Lateral Police Officer (along with 17 other applicants), his responsibility was to review that Eligibility List to determine which candidates, if any, he would move forward in the hiring

8

1    process.  [Schofield Decl. ¶ 5; Morizono Decl. ¶ 4; Gustafson Decl. ¶ 2.]  When Sgt. Schofield

2    saw that Tim Gardner was on the Eligibility List, he informed Lt. Morizono that he had "**zero**

3    **inclination to move Tim Gardner forward**" in the process, meaning Plaintiff would not

4    receive a background check, and he would no longer be considered for the position.  [*Id.*]  Sgt.

5    Schofield told Lt. Morizono that his own working experiences with Tim Gardner were very

6    unfavorable, as he had personal knowledge that it would be a "**big mistake to bring him back**."

7    Sgt. Schofield specifically recounted to Lt. Morizono that Tim Gardner's actual work

8    performance as a Police Officer made him a "known entity" and he should not be rehired.  Sgt.

9    Schofield also told Lt. Morizono that Plaintiff was a "**real problem**" in the street, as he was

10   **very argumentative and aggressive** in his dealings with those he encountered on the street, and

11   he had received a number of IAB complaints.  Plaintiff was also a problem in the department, as

12   Sgt. Schofield recalled that he could be argumentative with anyone, including co-workers.  Sgt.

13   Schofield also told Lt. Morizono that his previous extensive experience with Plaintiff led him to

14   conclude that Plaintiff was a "**malcontent**" and an "**angry, bitter, anti-establishment**" Police

15   Officer.  When Sgt. Schofield and Plaintiff  were working together in DTF, Plaintiff made

16   repeated comments in Sgt. Schofield's presence where Plaintiff questioned direct orders from

17   Command Staff, and Plaintiff was often angry and agitated when describing the instructions and

18   decisions of superior officers.  Sgt. Schofield thought that it was important to use these direct

19   terms with Lt. Morizono, as he **"wanted there to be no misunderstanding of his position that**

20   **it would be a big mistake to re-hire Plaintiff."  [*Id.*]**

21

22              **b.    BPD Lieutenant Erik Upson Was Also Strongly Opposed To Hiring**
                       **Plaintiff**

23              Before dropping Plaintiff from consideration for hire, Lt. Morizono took the extra step of

24   double-checking with another co-worker of Plaintiff's who was now a supervisor -- then-

25   Lieutenant Erik Upson (since promoted to Captain).  [Morizono Decl. ¶ 5.]  Lt. Morizono told

26   Lt. Upson that Plaintiff was on an Eligibility List for Lateral Police Officer and asked Lt. Upson

27   if he had ever observed Plaintiff's work performance while Lt. Upson was a Police Officer.

28   [Upson Decl. ¶ 3.]  Lt. Upson confirmed that he had interacted on the street with Plaintiff, and

DEF. CITY OF BERKELEY'S NOTICE AND MPA IN SUPPORT OF SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION ~ NO. C10-03410 EMC

1  responded emphatically "**I would be against hiring him**." [*Id.*] Lt. Upson told Lt. Morizono

2  about two areas of Plaintiff's prior performance that formed the basis of his position: Plaintiff's

3  actions on the street, and the way Plaintiff treated fellow officers. Lt. Upson described Plaintiff

4  as a "**maverick**", as he was often "**pushing the envelope" with his aggressiveness and the**

5  **manner in which he related to the public**. [*Id.*] Lt. Schofield told Lt. Morizono that his

6  observations matched the reputation he heard from other officers about Plaintiff, that **he created**

7  **so many "148 cases" (resisting arrest), as a result of the way he escalated many interactions**

8  **he had in the street**. [*Id.*] Lt. Upson also told Lt. Morizono about Plaintiff's rude and

9  dismissive manner towards officers junior to him, which had included Lt. Upson.

10

11          **c.**    **Once P&T Lieutenant Morizono Confirmed Sgt. Schofield's Conclusion With Lieutenant Upson That Plaintiff Was Not Suitable For Hire, Lt. Morizono Decided BPD Would Not Hire Plaintiff**

12

13        Once Lt. Morizono had heard from two extremely well respected BPD supervisors, and

14  both were both strongly opposed to hiring Plaintiff, Lt. Morizono decided to do nothing further

15  regarding Plaintiff on the Eligibility List, other than informing Administrative Captain Eric

16  Gustafson that "we're not moving forward" on Plaintiff, based on solid feedback he had received

17  from Sgt. Schofield and Lt. Upson. [Morizono Decl. ¶ 5.]

18

19          **d.**    **Plaintiff's Injury Was Not Discussed or Considered By Lt. Upson, Lt. Morizono and Sgt. Schofield, Nor Did Lt. Upson and Lt. Morizono Know Anything About Plaintiff's Injury**

20

21        At no point during this evaluation process was Plaintiff's prior injury discussed or

22  considered by Lt. Morizono, Sgt Schofield or Lt. Upson, as none of those three knew anything

23  about Plaintiff's medical condition, except that Sgt. Schofield had heard many years before that

24  Plaintiff was medically cleared to return. [Upson Decl. ¶ 4; Morizono Decl. ¶ 6; Schofield Decl.

25  Decl. ¶ 7.] In deciding not to hire Plaintiff, all three only considered Plaintiff's prior

26  performance. [*Id.*]

27  //

28  //

DEF. CITY OF BERKELEY'S NOTICE AND MPA IN SUPPORT OF SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION ~ NO. C10-03410 EMC

**H.     Plaintiff Filed His First-Ever Administrative Charge Claiming Discrimination On February 16, 2010**

On February 16, 2010, Plaintiff filed his first-ever administrative charge of discrimination against the City of Berkeley and individual managers.  [Pltf depo 105:4-106:1, Exh. 16.]  That filing was with the California Department of Fair Employment and Housing, and Plaintiff was issued a Right to Sue Letter on February 16, 2010.  Plaintiff filed this lawsuit on June 23, 2010, in Superior Court of Alameda County.  [Zembsch Decl., Exh. C.]

## IV.     ARGUMENT

**A.     Legal Standard for Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides a motion for summary judgment shall be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Where plaintiff has the burden of proof at trial, summary judgment is appropriate if plaintiff fails to come forward with evidence supporting a genuine issue of material fact.  *Celotex Corp. v. Catrett* (1986) 477 U.S. 317, 323-24.  The court determines what facts are "material" and whether there is a "genuine" issue of fact.  *See Anderson v. Liberty Lobby, Inc.* (1986) 477 U.S. 242, 248.  A mere "scintilla" of evidence is insufficient to prevent summary judgment.  *Id.* at 248 and 252.

For courts interpreting California's Fair Employment and Housing Act (Cal. Gov't Code sections 12900 *et seq.* "FEHA"), summary judgment is properly granted when the submitted papers establish that "there is no triable issue as to any material fact", and "the moving party is entitled to judgment as a matter of law."  Cal. Code of Civ. Proc., §437c, subd. (c).  The City meets its burden if it shows that one or more of Plaintiff's *prima facie* elements cannot be established, or that there is a complete defense to Plaintiff's claims.  Cal. Code of Civ. Proc., §437c, subd. (p) (2).  These summary judgment standards apply to cases brought pursuant to FEHA.  *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317.

//

//

**B.     The Great Majority of the Claims In Plaintiff's Complaint Are Time-Barred**

      **1.     Plaintiff's FEHA Causes of Action (Nos. 1-6) That Arose Prior to February 16, 2009 Are Time-Barred**

It is undisputed that the first time Plaintiff filed any type of administrative complaint with any agency was February 16, 2010, when he filed a variety of DFEH complaints against the City and three retired BPD managers.  [Pltf depo p. 105:15-25.]  It is well-settled that there can be no liability for any conduct alleged to have occurred more than one year before the filing of a DFEH complaint.  Cal. Gov't Code § 12960(d); *Thompson v. City of Monrovia* (2010) 186 Cal. App. 4th 860, 879; *National R.R. Passenger Corp. v. Morgan* (2002) 536 U.S. 101; 122 S. Ct 2061[1].  The only exception to that rule is if the "continuing violation doctrine" applies to the facts of the case.  However, the continuing violation doctrine only applies in the limited situations where an alleged "hostile work environment" has been created with a series of severe or pervasive acts, at least one of which must occur within the limitations period.  *Thompson,* 186 Cal.App.4[th] at 879; *National R.R. Passenger Corp.,* 536 U.S. at 115.  For reasons discussed more fully in Section IV.G below, Plaintiff has no credible claim of "hostile work environment" harassment.  Thus, because Plaintiff can only allege a "discrete" claim (as he has no evidence to support a harassment claim), all alleged acts prior to February 16, 2009 are time barred.

In *National R.R. Passenger Corp,* the United States Supreme Court ruled on a case from the Ninth Circuit and held that any alleged allegations of "a discrete retaliatory or discriminatory act" that occurred outside the limitations period "are untimely filed and no longer actionable*."* *Id.* at 115.  The Supreme Court defined "discrete acts" as acts such as "termination, failure to promote, denial of transfer, or refusal to hire."  *Id.* at 114. Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.

It is undisputed that Plaintiff last worked for the City in December 2001.  [Pltf depo p. 41:11-13.]  Thus, applying the "discrete acts" analysis in this case, throughout Plaintiff's complaint, he alleges a variety of acts (requests for reinstatement in 2003, 2007-2008 and his

---

[1]  In interpreting California's FEHA, California courts routinely look to federal courts' interpretation of federal antidiscrimination laws.  *State Dept. of Health Servs. v. Superior Court* (2003) 31. Cal 4th 1026, 1040.

1    unsuccessful application in April 2009) that fall into the category of "refusal to hire."  "Refusal

2    to hire" is one of the specifically identified "discrete acts" by the US Supreme Court in *National*

3    *R.R. Passenger Corp.*; accordingly, all of those alleged acts (except for the April 2009

4    application) are time-barred.

5

6    **C.     The Allegations In Plaintiff's 7th and 8th Causes of Action That Arose Prior to
            June 23, 2008 Are Time-Barred**

7           Most of Plaintiff's claims in his Seventh Cause of Action, that the City's conduct

8    violated his rights under 42 USC §§1983 and 1985, are similarly time-barred.  The statute of

9    limitations for section 1983 and 1985 claims is the forum state's personal injury period.  For

10   personal injury actions in California that arose on or after January 1, 2003, the statute of

11   limitations is two years (prior to that date it was one year).  *Berg. v. Cal. Horse Racing Bd.* (E.D.

12   Cal. 2006) 419 F. Supp. 2d 1219, 1225 (citing Cal. Code Civ. Pro. § 335.1 and *Krupnick v. Duke*

13   *Energy Morro Bay*  (2004) 115 Cal. App. 4th 1026, 1028).

14          For Plaintiff's Eighth Cause of Action (an alleged violation of California Constitution,

15   Article I, § 7), the same statute of limitations for personal injuries applies.  *Cellini v. Harcourt*

16   *Brace & Co.* (S.D. Cal. 1999) 51 F. Supp. 2d 1028, 1035 (applying prior CCP § 340(3) to

17   employment based violations of Article I, section 7).  Thus, for claims arising after January 1,

18   2003, the statute is two years (prior to that date it was one year).

19          Applying those principles to the instant case, Plaintiff filed this complaint on June 23,

20   2010.  Reaching back the maximum two years, for the 7th and 8th Causes of Action, the City can

21   only be liable for acts from June 23, 2008 forward.  Effectively, that means that the only

22   additional act the Court may consider (besides the April 2009 application process) is the City's

23   final written denial of Plaintiff's last request for reinstatement, dated August 11, 2008.  [Pltf

24   Depo pp. 92:9-93:8.]  As shown above, all other acts are time-barred.

25   //

26   //

27

28

**D.     The City Is Entitled To Summary Judgment On Plaintiff's First Cause Of Action For Disability and/or Medical Condition Discrimination -- FEHA (Gov. Code §12940)**

**1.     Under The "*McDonnell Douglas* Shifting Burdens" Analysis, The City Is Entitled To Summary Judgment**

As first established by the United States Supreme Court in a failure to rehire case (*McDonnell Douglas v. Green* (1973) 411 US 792 and approved for use in FEHA cases by the California Supreme Court in *Guz, supra*), a three prong test is applied when assessing the merits of discrimination claims.  First, Gardner has the initial burden of establishing a *prima facie* case of discrimination by proving the following:  that (1) he was a member of a protected class, (2) that he applied for and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) some other circumstance that suggests a discriminatory motive.  *McDonnell Douglas*, 411 US at 802; *Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 603; citing *Guz v. Bechtel National, Inc.* (2000) 24 Cal. 4th 317, 354-355.  Only if a *prima facie* case is established does the burden shift to City to produce evidence of a legitimate, nondiscriminatory business reason for its actions.  *Guz, supra* at 355-356.  If accomplished, the burden shifts back to Plaintiff to establish that City's articulated reason was a "pretext" for unlawful discrimination.  *Id.*; *Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1004-1005; *accord Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1735.  ("[A]n employer is entitled to summary judgment if, considering the employer's innocent explanation for its actions, the evidence as a whole is insufficient to permit a rational inference that the employer's actual motive was discriminatory.")

The fact that plaintiff's evidence constitutes a *prima facie* case does not necessarily support a denial of summary judgment.  The probative value of Plaintiff's evidence must be strong enough to overcome any legitimate reasons given by City for the action taken.  *Guz*, 24 Cal.4th at 362, 367; *Begnal v. Canfield & Assocs.* (2000) 78 Cal.App.4th 66, 74.  The stronger the employer's showing of legitimate reasons for its actions, the greater the circumstantial evidence of discriminatory motive is required.  *Id.*  Summary judgment must be granted where Plaintiff's evidence is insufficient to support a rational inference of discriminatory intent.  *Guz, supra* at

1    *367* (raw age comparisons were insufficient to infer discriminatory motive where employer's

2    stated reasons for downsizing were undisputed).  "Whether Plaintiff can meet (her) burden to

3    establish a *prima facie* case of discrimination is a matter of law to be determined by the court."

4    *Caldwell v. Paramount Unified School District* (1995) 41 Cal. App.4th 189, 201.

5           For purposes of this motion, and without waiving its right to assert the argument later in

6    this litigation, the City assumes Plaintiff can make a *prima facie* case of discrimination with

7    respect to his alleged disability and/or perceived disability.  The City does so in order to bring

8    the Court's attention to the overwhelming evidence of legitimate, nondiscriminatory business

9    reasons for the City's actions.  *Guz, supra* at 355-356.

10

11        **2.    The City Has Established Legitimate, Non Discriminatory Business Reasons
               for Its Employment Decisions Regarding Plaintiff, and Plaintiff Fails to
12             Create a Triable Issue Of Material Fact Regarding Pretext**

13          The City must prevail if it "establish[es] an undisputed legitimate, nondiscriminatory

14   basis for [the employment decision.]"  *Valdez v. City of Los Angeles* (1991) 231 Cal. App. 3d

15   1043. Absent "substantial responsive evidence . . . of the untruth of the employer's justification

16   or a pretext, a law and motion judge may summarily resolve the discrimination claim."

17   *University of Southern California v. Superior Court*  (1990) 222 Cal. App. 3d 1028, 1039;

18   *accord Le Bourgeois v. Fireplace Mfg*. (1998) 68 Cal. App. 4th 1049, 1058.

19          Indeed, the City's undisputed evidence in this regard is overwhelming:  As declared by

20   both members of BPD's Personnel & Training Unit, Plaintiff was denied employment in 2009

21   because of supervisors having direct knowledge of his prior poor work performance.  See section

22   III.G.3, above.   The P&T Sergeant, Kevin Schofield, who has wide discretion to end the

23   evaluation process for Police Officer applicants, told the P&T Lieutenant, Matt Morizono, that

24   he had "zero inclination to move Tim Gardner forward" in the process because Plaintiff was a

25   "real problem in the street," "was very argumentative and aggressive," was a "malcontent" and

26   was "angry" and "bitter" and repeatedly questioned direct orders from Command Staff.

27          Lt. Morizono sought out another former co-worker of Plaintiff's, and received a similar

28   scathing report about Plaintiff's unsuitability for rehire, based on his prior work performance.

1    Then-Lieutenant Upson told Lt. Morizono that he "would be against hiring" Plaintiff, as he was

2    a "maverick" who was often "pushing the envelope" with his aggressiveness towards the public.

3    Lt. Upson told Lt. Morizono that Plaintiff would escalate situations, leading to "148 cases"

4    (resisting arrest).  Further, Lt. Upson told Lt. Morizono about Plaintiff's rude and dismissive

5    manner towards other police officers.

6            Moreover, during a 22-month stretch from July 2008-May 2010 (encompassing the entire

7    time Plaintiff was on the Eligibility List), a total of three police officers were hired by BPD, only

8    two of those as Lateral Police Officers.  See section III.G.1.  Those two hires were both current

9    police officers working for UCPD within the City of Berkeley.  [Hambleton Decl. ¶¶ 10;

10   Gustafson Decl. ¶ 4.]  Both lateral officers were personally highly recommended to Chief

11   Hambleton by UCPD Chief Victoria Harrison, and also recommended by BPD staff who had

12   worked with them.  [Hambleton Decl. ¶ 10; Gustafson Decl. ¶ 4.]

13           As shown above, there is simply no dispute that valid non-discriminatory business

14   reasons were the sole reasons that the City did not hire Plaintiff.

15           **3.      City Has Established Legitimate, Non Discriminatory Business Reasons For
16           Its Failure To Hire Plaintiff, and Plaintiff Fails To Create A Triable Issue Of
                 Material Fact Regarding Pretext**

17

18           Once the City successfully establishes that it had valid non-discriminatory business

19   reasons to not hire Plaintiff, the burden shifts back to Plaintiff to establish that City's articulated

20   reasons are a "pretext" for unlawful discrimination.  *Guz, supra at* 355-356; *Hersant v. Depart-*

21   *ment of Social Services* (1997) 57 Cal.App.4[th] 997, 1004-1005; *accord Martin v. Lockheed*

22   *Missiles & Space Co.* (1994) 29 Cal.App.4[th] 1718, 1735 ("[A]n employer is entitled to summary

23   judgment if, considering the employer's innocent explanation for its actions, the evidence as a

24   whole is insufficient to permit a rational inference that the employer's actual motive was dis-

25   criminatory.").  Plaintiff simply has no such evidence.  The City anticipates that Plaintiff will try

26   to show that a disputed 2002 comment by then-Captain Hambleton, allegedly commenting on

27   Plaintiff's first attempt to be re-hired before he was even medically cleared, is evidence of

28   disability animus that bears on the decision made by others, seven years later, to not hire

16

Plaintiff.  Even if the Court is willing to consider the vague comment, it is undisputed that Chief

Hambleton played no role in the decision to drop Plaintiff from consideration.  See sections

III.G.2 and 3, above.  It is further undisputed that the three supervisors who provided input

and/or made the decision to not hire Plaintiff did not communicate in any way with Chief

Hambleton, nor were they aware of Plaintiff's prior injury.  See section III.G.3.d., above.

**E.      The City Is Entitled To Summary Judgment On Plaintiff's Second and Third Causes Of Action For Reasonable Accommodation and Failure To Engage In Interactive Process Violations -- FEHA (Gov. Code §12940)**

**1.      Plaintiff Cannot Prevail On His "Failure To Attempt to Reasonably Accommodate" Cause of Action, As The City Did Not Make A "Conditional Job Offer" to Plaintiff**

Plaintiff applied for Lateral Police Officer on February 27, 2009.  [COB 0008-0013,

attached to Zembsch Decl. at Exh. O.]  In that 6-page application he made two entries regarding

his physical condition: Under prior work experience, in the section for his previous work for

BPD, Plaintiff inserted in the "Reason for Leaving" section "Forced to resign for an on-duty

injury.  I have subsequently rehabilitated myself."  [Id. COB 0009.]  In "Additional

Information", Plaintiff wrote: Although I was forced to resign from the Berkeley Police

Department due to an on-duty injury, I have since rehabilitated myself and am not limited in the

way I was previously.  I will require minimal, if any, accommodations for my previous injury."

[Id. COB 0010.]  Plaintiff never requested an accommodation for the hiring process itself, nor

did he raise anything about such a request during his Oral Board Interview.  [Pltf depo at

118:17-24.]

That limited information Plaintiff disclosed on the application obviously only referred to

his possible accommodation if he got the job.  Further, disclosing that information clearly did

not disqualify Plaintiff from the hiring process in any way, as it is undisputed that after Plaintiff

submitted his application and completed the Oral Board interview, he was placed on the

Eligibility List.  The City does have a process for police officer applicants that request a

"reasonable accommodation" during the hiring process.  That process is to first evaluate the

applicant's qualifications, prior to making any inquiry regarding a medical condition.  If the

applicant receives a conditional offer of employment, the City at that point begins the evaluation of the reasonable accommodation request and engages in the interactive process, if required under the particular circumstances.  [Hodgkins Decl. ¶ 6.]  As detailed in Section III. G., above, Plaintiff was not offered a conditional offer of employment, thus eliminating the need for the City to inquire into what Plaintiff meant by "I will require minimal, if any, accommodations for my previous injury."

The City's process described above complies with Government Code § 12940(e) and 2 CCR § 7287.3, which severely limits an employer's ability to make "pre-employment inquiries" of job applicants.

### 2.     Plaintiff Cannot Prevail On His "Failure To Engage in Interactive Process" Claim

Similar to the analysis above, there was never a time during Plaintiff's application process where it would have been appropriate for the parties to "engage in the interactive process" prior to a conditional job offer.  Under these facts, there is no case law that holds the employer to be in violation of Government Code § 12940(n).  *See, Taylor v. Principal Financial Group, Inc.* (5th Cir. 1996) 93 F. 3d 155, 165 ("the initial burden rests primarily upon the employee…to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations"); cited with approval in *Scotch v. Art Institute of California* (2009) 173 Cal. App. 4th 986, 1013.

### F.     The City Is Entitled To Summary Judgment On Plaintiff's Fourth Cause Of Action For Retaliation in Violation of FEHA (Gov. Code §12940)

To establish a *prima facie* case of retaliation under the FEHA, Gardner must show (1) he engaged in a "protected activity," (2) City subjected him to an adverse employment action, and (3) a causal link existed between the two.  *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal. 4th 1028, 1042.  The *McDonnell Douglas* analysis applies to FEHA retaliation claims.  Once an employee establishes a *prima facie* case, the employer is entitled to summary judgment if it

1    produces a legitimate reason for the adverse employment action, and Gardner fails to establish

2    pretext.  *Yanowitz, supra.*

3         Under the undisputed facts in this case, Plaintiff cannot establish a *prima facie* case of

4    retaliation under the FEHA, as Plaintiff will be unable to show he engaged in a "protected

5    activity" under FEHA, nor that there is a "causal link".  Regarding "protected activity", prior to

6    Plaintiff's February 16, 2010 DFEH Charge, Plaintiff's sole assertion was that the City had

7    violated Government Code sections 21192 and 21193.  Plaintiff had simply not done any of the

8    acts specified in section 12940(h).  *See*, Gov't Code § 12940(h) ("…because the person has

9    opposed any practices forbidden under this part or because the person has filed a complaint,

10   testified, or assisted in any proceeding under this part.").

11        Even if the Court is willing to determine that Plaintiff engaged in "protected activity" by

12   bringing the 2003 Writ and writing the 2007-08 letters, he will be unable to establish the "causal

13   link" element for not getting the position he tested for in April 2009.  The most common ways

14   for employers to show there was no "causal link" is due to the length of time that passed

15   between the protected activity and the adverse action, and that the decision-makers were not

16   aware of the protected activity.  Here, the BPD supervisors that made the decision to not hire

17   Plaintiff were not involved in Plaintiff's earlier attempts to be reinstated.  *See Morgan v. Regents*

18   *of Univ. of Calif.* (2000) 88 Cal. App. 4th 52.  In *Morgan,* the court upheld summary judgment in

19   a failure to rehire case on plaintiff's retaliation claim by determining that the actual decision-

20   makers on the failure to rehire were unaware of plaintiff's past complaints of discrimination.  *Id.*

21   at 73-74.   Plaintiff cannot establish a "causal connection" for the additional reason that the

22   adverse action was not "shortly after" the Writ (6 years prior) and the letters (2 years prior).

23   *Sisay v. Greyhound Lines, Inc.*  (D.D.C. 1998) 34 F. Supp. 2d 59, 65 (for causal connection, the

24   adverse action must be shortly after the employer knew of the employee's protected activity or

25   the causal connection is severed).

26        Of course, even if the Court is inclined to find that Plaintiff did establish a *prima facie*

27   case of retaliation, the City must prevail on a FEHA retaliation claim if it can "establish an

28   undisputed legitimate, nondiscriminatory basis for [the employment decision.]"  *Valdez v. City of*

19

DEF. CITY OF BERKELEY'S NOTICE AND MPA IN SUPPORT OF SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION ~ NO. C10-03410 EMC

1   *Los Angeles* (1991) 231 Cal. App. 3d 1043.  Absent "substantial responsive evidence . . . of the

2   untruth of the employer's justification or a pretext, a law and motion judge may summarily

3   resolve the discrimination claim." *University of Southern California v. Superior Court* (1990)

4   222 Cal. App. 3d 1028, 1039; *accord Le Bourgeois v. Fireplace Mfg.* (1998) 68 Cal. App. 4th

5   1049, 1058.

6           Indeed, the City's evidence in this regard is overwhelming:  as detailed in Sections IV. D

7   and E, above, Gardner was denied the position due to his poor prior work performance.  Further,

8   similar to the analysis in Section IV. E above, there is no evidence that any one who received the

9   2007-08 letters had anything to do with the decision to not hire him, as it is undisputed that

10  Chief Hambleton and David Hodgkins played no role in the decision to drop Plaintiff from

11  consideration for the position.

12

13  **G.      The City Is Entitled To Summary Judgment On Plaintiff's Fifth Cause Of Action
            For Harassment in Violation of FEHA (Gov. Code §12940)**

14          Although FEHA does prohibit harassment of a job applicant, Plaintiff has no evidence of

15  harassment.  First, Plaintiff conceded in his deposition that from 2002 to the present there were a

16  total of three conversations in BPD where his disability or injury was mentioned, and he was not

17  present for any of those three.  [Pltf depo pp. 147:11-148:15.]  Further, since Plaintiff retired in

18  2001, he has spoken to former Chief Hambleton a total of two times, both in social settings, and

19  neither time did Hambleton say anything offensive.  [Pltf depo pp. 143:12-145:20, and Exh. 20.]

20  Similarly, Plaintiff concedes that he has never had a conversation with Human Resources

21  Director David Hodgkins, and he is not aware of Mr. Hodgkins ever saying anything offensive

22  about him.  [Pltf depo pp. 148:24-149:14.]

23          Thus, Plaintiff's "evidence" of harassment is a total of three conversations over 9 years

24  made by BPD managers referencing Plaintiff's work injury, and none of them made in his

25  presence!  Clearly, that scant showing does not meet the well-established standard that for

26  conduct to constitute actionable harassment under the FEHA, it "must be 'sufficiently severe or

27  pervasive "to alter the conditions of [the victim's] employment and create an abusive working

28

1  environment." *Dee v. Vintage Petroleum, Inc.* (2003) 106 Cal. App. 4th 30, 35, quoting *Meritor*

2  *Savings Bank v. Vinson* (1986) 477 U.S. 57, 67.

3      A recent example of one of many cases upholding summary judgment for the employer

4  in situations with far more severe or pervasive conduct is *Holmes v. Petrovich Development Co.*

5  *LLC* (2011) 191 Cal. App. 4th 1047.  The court sustained summary adjudication in favor of the

6  defendant employer on Plaintiff's FEHA pregnancy harassment claims, even after it found that

7  plaintiff's supervisor emailed her repeatedly regarding her maternity leave schedule and

8  discussed the need to replace her if she was gone too long.  *Id.* at 1054-57, 1059-60.  The court

9  held: "The undisputed brief, isolated, work-related exchanges between [plaintiff] and [her

10  supervisor], and others in the office, could not be objectively found to have been severe enough

11  or sufficiently pervasive to alter the conditions of her employment and create a hostile or abusive

12  work environment." *Id.* at 1057.  *See also*, *McRae v. Department of Corrections & Rehabilita-*

13  *tio*n (2006) 142 Cal. App. 4th 377, 386-387; *Lyle v. Warner Brothers Television Productions*

14  (2006) 38 Cal.4th 264, 283-284:  ("[A]n employee generally cannot recover for harassment that

15  is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of

16  harassment of a repeated, routine, or a generalized nature.").

17      Plaintiff testified at his deposition that from January 2009 to the present, there were only

18  two acts by the City that he considered to be harassment: "forcing" him to apply for the open

19  position and "refusing to engage in dialogue" about his accommodation.  [Pltf depo pp. 137:6-

20  138:15.]  California law is clear that "harassment is not conduct of a type necessary for

21  management of the employer's business or performance of the supervisory employee's job."

22  *Thompson v. City of Monrovia* (2010) 186 Cal. App. 4th 860, 879, quoting *Reno v. Baird* (1998)

23  18 Cal. 4th 640, 646.  *See also*,  *Janken v. GM Hughes Electronics* (1996) 46 Cal. App. 4th 55,

24  64-65.  ("We conclude that …the Legislature intended that commonly necessary personnel

25  actions such as hiring and firing…do not come within the meaning of harassment.")  Thus,

26  Plaintiff's allegations of harassment, even considering the entire ten year period after his

27  retirement, are woefully inadequate to survive summary judgment.

28  //

**H.     The City Is Entitled To Summary Judgment On Plaintiff's Sixth Cause Of Action For Failure To Prevent Discrimination in Violation of FEHA (Gov. Code §12940(k))**

"An actionable claim under section 12940, subdivision (k) is dependent on a claim of actual discrimination: 'Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct, except where the actions took place and were not prevented.'" *Scotch v. Art Institute of California* (2009) 173 Cal. App. 4th 986, 1021, quoting *Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 289.

For the reasons that entitle the City to summary judgment on Gardner's underlying claims that he was not subject to any conduct that violates FEHA, Gardner's sixth cause of action fails as well.  *See, Scotch v. Art Institute of California* 173 Cal. App. 4th at 1021 (if court grants summary judgment on all of plaintiff's FEHA claims, it must grant summary judgment on this claim as well).

**I.     The City Is Entitled To Summary Judgment On Plaintiff's Seventh and Eighth Causes Of Action For Section 1983 and 1985 Claims and Violation of California Constitution, Article I, Section 7**

    **1.     The City Afforded Plaintiff Any Due Process Rights He Was Entitled To**

By expanding the statute of limitations to two years from the date of filing the lawsuit (back to June 23, 2008), there is only one additional act by the City that could conceivably be the basis of liability: The City's August 11, 2008 response to Plaintiff's assertion that he was entitled as a matter of law to be reinstated, despite the judgment against him on that same point.

The City did not violate Plaintiff's due process rights (or any other Constitutional right) in either instance.  It is undisputed that Plaintiff had no property rights at any time with the City after December 2001, when he voluntarily resigned.  For the many reasons discussed in sections IV.C-H above, the City afforded Plaintiff his due process rights in 2009 when it considered him for employment, all the while following its Personnel Ordinance and hiring process.  Similarly, there was no due process violation regarding the letter the City sent Plaintiff on August 11, 2008.  Plaintiff was not an employee (or even an applicant) at that time; he was an individual who had expressed an interest in being rehired by the City.  The City provided a detailed

22

response to that request, that along with its earlier 2007 detailed written response, provided all information the Plaintiff needed in order to properly pursue a job with the City of Berkeley. Plaintiff's attempt to claim that the City, by responding to Plaintiff's demand for reinstatement by citing the ruling made against him by Superior Court, somehow violated his Constitutional rights is ludicrous.

### 2. Plaintiff Cannot Bring 1983 or 1985 Claims For Rights Created By Anti-Discrimination Statutes

A plaintiff cannot bring a section 1983 claim that the City violated rights created under anti-discrimination statutes, as several courts have held that to do so would give plaintiffs "two bites at precisely the same apple." *See, Holbrook v. City of Alpharetta* (11th Cir 1997) 112 F.3d 1522, 1531, cited with approval in *Stine v. Penn. State Police* (M.D. Pa. 2010) 2010 US Dist. LEXIS 116402 (plaintiff's § 1983 claim alleging that defendants violated his rights created under the ADA must be dismissed, "because Congress foreclosed the use of § 1983 as a vehicle for such a claim by providing [plaintiff] with an exhaustive remedy under the ADA.")

The 1985 claim must be dismissed, as courts have repeatedly held that employment claims that are covered by Title VII cannot be asserted through section 1985. *See, e.g.*, *Ward v. Coastal Carolina Health Care, P.A.* (E.D. NC 2009) 597 F. Supp. 2d 567; *Morgan v. Humboldt Community School Dist.* (D.C. Nev. 1985) 623 F. Supp. 440.

### 3. The Eighth Cause of Action for Violation of Article I, Section 7 of the California Constitution Also Must Fail

The Eighth cause of action is apparently based on Plaintiff's allegations in paragraphs 79 and 80 of his Complaint that he is a public employee of the City of Berkeley.  Accordingly, that claim must fail, as it is undisputed that Plaintiff has not been employed by the City since December 2001.  [Pltf depo p. 41:11-13.]  Whatever due process rights Plaintiff had as a person interested in pursuing employment were easily met by the City's detailed responses and instructions about how to pursue employment.

# V.     CONCLUSION

For the above reasons, the City of Berkeley requests the Court grant its Motion for Summary Judgment, award judgment to the City, and issue an award of costs.


Dated:  November 16, 2011            Respectfully submitted:

                                  ZACH COWAN, City Attorney
                                  MARK J. ZEMBSCH, Deputy City Attorney


                                  By:  _____/s/_____
                                        MARK J. ZEMBSCH
                                        Attorneys for Defendant CITY OF BERKELEY

24

DEF. CITY OF BERKELEY'S NOTICE AND MPA IN SUPPORT OF SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, SUMMARY ADJUDICATION ~ NO. C10-03410 EMC