UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TIMOTHY GARDNER,

       Plaintiff,

   v.

CITY OF BERKELEY,

       Defendant.

_____/

No. C-10-3410 EMC

**ORDER PARTIALLY GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

**(Docket No. 41)**

    Defendant's motion for summary judgment came on for hearing before the Court on December 23, 2011.  Docket No. 41.  For the reasons set forth below, the Court **PARTIALLY GRANTS** Defendant's motion for summary judgment.

## I.  FACTUAL & PROCEDURAL HISTORY

    Plaintiff Timothy Gardner was hired by the Berkeley Police Department ("BPD") as a Police Officer Recruit on July 25, 1995.  Docket No. 48, Exh. A at 35:7-14 ("Gardner Dep.").  Plaintiff became a permanent employee in the classification of Police Officer on December 17, 1997.  Docket No. 48, Exh. D.  Plaintiff was subsequently injured in 1997 and taken off work by his doctor for approximately three weeks.  Docket No. 84 ¶ 5 ("Gardner Decl.").  Despite the injury, Plaintiff's supervisor, Sergeant Garrin Neilson, recommended that Plaintiff return earlier, suggesting that a significant injury could result in retirement.  Gardner Decl. ¶ 5.  On Plaintiff's return, he was berated by his commander, Lieutenant Michele Delatour, who stated that Plaintiff was expected to come into work "[u]nless you're in a body cast."  Gardner Decl. ¶ 6.  When Plaintiff's injury was aggravated and required surgery, Plaintiff's new supervisor, Sergeant Kerry Kent, told Plaintiff that it was not a

good time to get injured. Gardner Decl. ¶ 8. Upon Plaintiff's return, Plaintiff was "placed in the notoriously tedious light duty assignment of taking cold reports, called 'TRT,' that was commonly assumed to be such an unpleasant assignment that officers would either try to come back full-duty against their doctor's orders, or accept a disability retirement." Gardner Decl. ¶ 8. As a result, Plaintiff returned to work earlier than he wanted. Gardner Decl. ¶ 8.

During Plaintiff's career, Plaintiff was the subject of nineteen complaint investigations by BPD's Internal Affairs Bureau ("IAB"), including eight complaints for excessive force. Docket No. 50, Exh. A. Seven complaints were brought in a five-month span. Docket No. 42 ¶ 4 ("Hambleton Decl."). The majority of the complaints were deemed unfounded or were not sustained, and several complaints were directed at the team that Plaintiff was a part of rather than at Plaintiff specifically. Gardner Decl. ¶ 9. Four complaints were ultimately sustained, including one for excessive force.[1] Docket No. 50, Exh. A. As a result of the complaints, Plaintiff was placed on an Early Warning System.[2] Hambleton Decl. ¶ 5. Parties dispute the significance of these complaints. Defendant describes Plaintiff's seven complaints in a five-month span as "extremely high," resulting in a negative opinion of Plaintiff's performance. Hambleton Decl. ¶ 5. Plaintiff argues that the number of complaints was not unusual because working in the Drug Task Force usually resulted in more complaints due to the inherently confrontational nature of the assignment and the use of the complaint process by drug dealers to retaliate against police officers. Gardner Decl. ¶ 9; Docket No. 62 ¶ 4 ("Libed Decl."); Docket No. 65 ¶ 8 ("Lopes Decl."); Docket No. 66 ¶ 4 ("Reece Decl.").

Parties also dispute whether Plaintiff had a good personal reputation during his career. Defendant describes Plaintiff as overly aggressive and a "malcontent," creating problems in the workplace as well as in the field. Docket No. 46 ¶ 5 ("Schofield Decl."); Docket No. 47 ¶ 3 ("Upson Decl."). Plaintiff argues that he was well-liked by his peers, and received positive

---

[1] Two other complaints involved police car mishaps, and the third concerned Plaintiff's and his partner's failure to generate a computer notation for a detention that did not result in an arrest. Docket No. 50, Exh. A.

[2] The Early Warning System is a non-documented form of verbal counseling to determine if there are areas needed for improvement for an officer. Gardner Decl. ¶ 10. Parties do not appear to dispute that the Early Warning System is not a punitive measure.

**United States District Court**
For the Northern District of California

1  Performance Appraisal Reports that praised his professionalism and ability to be a team player,

2  commendations, and special assignments based on competitive exams and a recommendation

3  process. *See, e.g.*, Docket No. 84, Exhs. 4, 10-13; Lopes Decl. ¶ 4; Libed Decl. ¶ 3; Reece Decl. ¶¶

4  3, 6; Docket No. 57 ¶ 3 ("Cobert Decl."); Docket No. 64 ¶¶ 2, 3 ("Dave Lindenau Decl."); Docket

5  No. 84 ¶ 2 ("Frankel Decl.").

6      Plaintiff's employment with BPD ended when he retired on medical disability in 2001, due

7  to his 1997 injury.  Gardner Decl. ¶¶ 2, 5. In 2000, Administrative Captain Douglas Hambleton

8  informed Plaintiff that BPD was retiring Plaintiff because of the restrictions placed on Plaintiff

9  because of his injury, and took Plaintiff off work.  Gardner Decl. ¶¶ 20, 21.  In 2001, Plaintiff filled

10  out the paperwork for a disability retirement because he feared that his injury time compensation

11  would run out before BPD submitted the paper work, a common form of retaliation.  Gardner Decl. ¶

12  22; Gardner Dep. 38:6-15.  Several months later, Captain Hambleton required Plaintiff to write and

13  sign a letter of resignation in return for his retirement pension.  Gardner Decl. ¶ 22.  Plaintiff's

14  retirement application was approved in December 2001.  Docket No. 43 ¶ 2 ("Hodgkins Decl.").

15      In 2002, Plaintiff sought reinstatement with BPD.  Docket No. 72, Exh. 6; Docket No. 48,

16  Exh. H.  Although Plaintiff was not yet medically cleared, Defendant placed Plaintiff on an

17  eligibility list that would expire in December 2003.  Docket No. 72, Exh. 6; Docket No. 48, Exh. F;

18  Gardner Decl. ¶ 26.  Plaintiff was medically cleared in April 2003, at which point he requested

19  reinstatement.  Docket No. 48, Exh. I; Gardner Depo. 47:18-48:1.  BPD responded that there was no

20  legal obligation to reinstate Plaintiff, and refused to reinstate Plaintiff.  Defendant attributes this

21  decision to Police Chief Roy Meisner exercising his discretion to not reinstate Plaintiff based on

22  Plaintiff's prior performance and disciplinary record.  Docket No. 48, Exh. K ¶ 8.  Plaintiff contends

23  that BPD gave shifting rationales for its decision, including alleging that the Chief had no role in

24  reinstating retired officers, a hiring freeze, concerns that Plaintiff sought a higher pension, and

25  claiming that BPD never received his reinstatement request.  Docket No. 72, Exhs. 6, 7; Docket No.

26  76, Exh. 35 30:6-14 ("Frankel Dep.").

27      In 2003, Plaintiff petitioned for a writ of mandate requiring that BPD reinstate Plaintiff under

28  California Government Code § 21192 and § 21193.  Docket No. 48, Exh. G.  The court denied

1   Plaintiff's petition, finding that the Police Chief had discretion to not reinstate Plaintiff.  Gardner

2   Dep. 57:21-58:4.  Plaintiff did not appeal the court's decision.

3          In 2006, Sergeant David Frankel offered to make informal inquiries about reinstating

4   Plaintiff.  Frankel Decl. ¶ 28.  However, when Sergeant Frankel approached Captain Eric Gustafson

5   about reinstating Plaintiff, Captain Gustafson informed Sergeant Frankel that reinstatement was

6   unlikely because the black command staff did not like Plaintiff.  Frankel Dep. 37:2-38:5.

7          Between June 2007 and August 2008, Plaintiff began corresponding with Defendant's

8   Human Resources Department.  Plaintiff claims that he requested a meeting or reasonable

9   accommodations, while Defendant claims that Plaintiff wrote to argue that Defendant was required

10  to reinstate him.  Gardner Decl. ¶ 30; Docket No. 43 ¶ 2 ("Hodgkins Decl.").  In an August 2008

11  letter, Defendant informed Plaintiff that the City had no duty to reinstate Plaintiff and did not intend

12  to take any action on Plaintiff's reinstatement request.  Hodgkins Decl., Exh. A.  Instead, Plaintiff

13  would have to go through a new recruitment and examination process to be rehired.  Hodgkins Decl.

14  ¶ 4, Exh. A.

15         Although Plaintiff was confused by this suggestion, Plaintiff applied as a new recruit in

16  February 2009.  Gardner Decl. ¶ 30; Gardner Dep. 77:1-12.  Plaintiff completed the application

17  process at the top of his field, and was placed on the eligibility list as "Best Qualified."  Gardner

18  Decl. ¶ 30; Docket No. 48, Exh. A.  In his application, Plaintiff stated that he might require

19  accommodation, but was never contacted regarding the issue of accommodation.  Gardner Decl. ¶

20  30.

21         In April 2009, Plaintiff's application was denied.  Parties offer competing explanations for

22  this rejection.  Defendant states that at the time, BPD's Personnel & Training Unit was staffed by

23  then-Sergeant Kevin Schofield and Lieutenant Matt Morizono.  Docket No. 44 ¶ 2 ("Gustafson

24  Decl.").  Upon seeing Plaintiff's name on the eligibility list, Sergeant Schofield informed Lieutenant

25  Morizono that based on his past experience with Plaintiff, it would be a "big mistake to bring him

26  back."  Schofield Decl. ¶ 5.  Sergeant Schofield further recounted his past experiences with Plaintiff,

27  describing Plaintiff as aggressive and argumentative, and a "real problem" in the street.  Schofield

28  Decl. ¶ 5.  Based on Sergeant Schofield's description of Plaintiff, Lieutenant Morizono concluded

4

United States District Court

For the Northern District of California

1   that Plaintiff should not be rehired, but decided to double-check with Lieutenant Erik Upson for

2   further information about Plaintiff.  Docket No. 45 ¶¶ 4-5 ("Morizono Decl.").  Lieutenant Upson

3   likewise described Plaintiff as a "maverick" who "pushed the envelope" with his aggressiveness,

4   and recounted an incident in which Plaintiff hazed Lieutenant Upson.  Upson Decl. ¶ 3.  Based on

5   these conversations, Lieutenant Morizono decided to take no further actions on Plaintiff's

6   application.  Morizono Decl. ¶ 5.

7         Plaintiff denies that he was refused reinstated based on his past performance.  Plaintiff argues

8   that he had very limited experience with either Sergeant Schofield or Lieutenant Upson, and denies

9   that the hazing incident described by Lieutenant Upson occurred.  Gardner Decl. ¶¶ 15-19.  Plaintiff

10  instead claims that BPD informed him that his application was not considered because there was a

11  hiring freeze.  Gardner Decl. ¶ 34.  Despite this alleged hiring freeze, four other officers were hired.

12  Gardner Decl. ¶ 35.  Plaintiff argues that this hiring freeze and BPD's current rationale about his job

13  performance are pretense to BPD's true reason for not reinstating Plaintiff, which is BPD's hostility

14  towards medical injuries and disabilities.  Compl. ¶ 38.  Defendant denies that Plaintiff's prior injury

15  was considered by Lieutenant Morizono, Sergeant Schofield, or Lieutenant Upson.  Upson Decl. ¶ 4;

16  Morizono Decl. ¶ 6; Schofield Decl. ¶ 7.

17        Based on these events, Plaintiff filed his first administrative charge of discrimination against

18  Defendant and individual managers on February 16, 2010.  Gardner Dep. 105:15-106:1.  The

19  California Department of Fair Employment and Housing ("DFEH") issued Plaintiff a Right to Sue

20  Letter on March 19, 2010.  Docket No. 48, Exh. A.  Plaintiff then filed this suit against Defendant,

21  David Hodgkins, Doug Hambleton, Roy Meisner, and Bobby Miller on June 23, 2010, alleging eight

22  causes of action: (1) disability and/or medical condition discrimination under California Government

23  Code § 12940 et seq.; (2) failure to make or engage in reasonable accommodations under California

24  Government Code § 12940 et seq.; (3) failure to engage in a good faith interactive process to

25  determine reasonable accommodations under California Government Code § 12940 et seq.; (4)

26  retaliation under California Government Code § 12940(h); (5) harassment under California

27  Government Code § 12940; (6) failure to prevent discrimination under California Government Code

28  §12940(k); (7) violation of federal civil rights laws 42 U.S.C. § 1983 and 42 U.S.C. § 1985; and (8)

1  violation of the California Constitution, Article I, § 7.  Defendants then removed this suit to federal

2  court in August 2010.  Meisner and Miller were dismissed as Defendants in May 2011, and

3  Hodgkins and Hambleton were dismissed in November 2011.  Docket Nos. 24, 40.  Defendant now

4  moves for summary judgment.

## II.   DISCUSSION

5

6  A.   Standard of Review

7      Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered "if

8  the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

9  affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

10 party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue of fact is genuine

11 only if there is sufficient evidence for a reasonable jury to find for the nonmoving party.  *See*

12 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  "The mere existence of a scintilla of

13 evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence

14 on which the jury could reasonably find for the [non-moving party]."  *Id.* at 252.  All reasonable

15 inferences are drawn in the non-moving party's favor.  *Id.* at 255.

16     The moving party bears the burden of demonstrating the absence of a genuine issue of

17 material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party has

18 the ultimate burden of proof, the moving party may prevail on a motion for summary judgment by

19 pointing to the non-moving party's failure "to make a showing sufficient to establish the existence of

20 an element essential to that party's case."  *Id.* at 322.  Courts applying the California Fair

21 Employment and Housing Act ("FEHA") have found that a defendant prevails where it meets its

22 burden of showing that the plaintiff cannot state a prima facie case.  *E.g.*, *Guz v. Bechtel Nat'l, Inc.*,

23 24 Cal. 4th 317, 371-72 (2000) (Chin, J., concurring); *Sandell v. Taylor-Listug, Inc.*, 188 Cal. App.

24 297, 309 (2010).

25     In ruling on a motion for summary judgment, the Court may only consider admissible

26 evidence.  *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002).  Evidence must be authenticated in

27 order to be admissible, "and this condition is satisfied by 'evidence sufficient to support a finding

28 that the matter in question is what its proponent claims.'"  *Id.* (quoting Fed. R. Evid. 901(a)).

United States District Court

For the Northern District of California

B.     Statute of Limitations

1.     FEHA Causes of Action

Defendant argues that the majority of Plaintiff's FEHA claims are time-barred because Plaintiff did not file an administrative complaint until February 16, 2010.  Motion at 12-13.  Under California Government Code § 12960, "[n]o complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred," barring exceptions related to delayed discovery.  Cal. Gov. Code § 12960(d); *see also Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 811-12 (2001).  The statute of limitations is generally calculated from the date the plaintiff files his or her complaint unless the continuing violation doctrine applies.  *See Cucuzza v. City of Santa Clara*, 104 Cal. App. 4th 1031, 1040 (2002).

a.     Continuing Violation Doctrine

Under the continuing violation doctrine, "an employer is liable for actions that take place outside the limitations period if these actions are sufficiently linked to unlawful conduct that occurred within the limitations period."  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1056 (2005).  The continuing violation doctrine applies when an employer's unlawful acts are: (1) sufficiently similar in kind; (2) have occurred with reasonable frequency; and (3) have not acquired a degree of permanence.  *Richards*, 26 Cal. 4th at 823.  Thus, a continuing violation may exist where there is a company-wide policy or practice of discrimination, or a series of related acts against a single individual.  *Morgan v. Regents of the Univ. of Cal.*, 88 Cal. App. 4th 52, 64 (2001).  The continuing violation doctrine is justified on the grounds that:

> [a] rule that would force employees to bring actions for 'discrete acts of retaliation that have not yet become ripe for adjudication, and that the employee may not yet recognize as part of a pattern of retaliation, is fundamentally incompatible with the twin policy goals of encouraging informal resolution of disputes and avoiding premature lawsuits.*Yanowitz*, 36 Cal. 4th at 1058.[3]

---

[3] Applying this reasoning, the California Supreme Court declined to extend *National Railroad Passenger Corp. v. Morgan* to FEHA claims.  *Yanowitz*, 36 Cal. 4th at 1058 n.18.  In *National Railroad Passenger Corp.*, the Supreme Court found that under Title VII, the continuing violation exception only applied to hostile work environment claims.  536 U.S. 101, 122 (2002).  The California Supreme Court explicitly rejected this limited use of the continuing violation exception, stating:

1        In *Richards*, the plaintiff sued for disability discrimination, harassment, and failure to

2    reasonably accommodate her disability.  26 Cal. 4th at 802.  Although the alleged adverse actions

3    occurred over the course of five years, the court found that the continuing violation doctrine applied

4    because the defendant's failure to reasonably accommodate the plaintiff's disability was part of a

5    single course of conduct.  *Id.* at 819.  Thus, "[a]s with harassment, an instance of an employer's

6    failure to accommodate that in isolation may seem trivial can assume greater significance and

7    constitute a greater injury when viewed as one of a series of such failures."  *Id.* at 822.  Furthermore,

8    the court found that reasonably accommodation was often an ongoing process rather than a single

9    decision.  *Id.* at 821.  Requiring the plaintiff to sue for each discrete failure to accommodate would

10   prevent the plaintiff from engaging in an interactive process with her employer in the hope that the

11   parties would come to an informal resolution.  *Id.* at 823.  Once an employer makes clear that it will

12   not accommodate the employee–making the condition 'permanent'–the employee no longer has a

13   reason to delay, and will be required to take formal legal action.  *Id.*

14        Likewise, in *Yanowitz*, the California Supreme Court found that the plaintiff's claims were

15   not time-barred as a matter of law.  36 Cal. 4th at 1060.  There, the plaintiff was a regional sales

16   manager who refused to fire a female sales associate in 1997 that the general manager deemed was

17   not attractive enough.  *Id.* at 1038.  Beginning in April 1998, the general manager began to solicit

18   negative comments about the plaintiff from her subordinates, frequently criticized her management

19   style, and refused to allow her to answer these charges during a July 1998 meeting, ultimately

20   resulting in her departure.  *Id.* at 1039-40.  Although the plaintiff did not file her complaint with

21   DFEH until June 1999, the court found that the continuing violation doctrine could apply to impose

22   liability for actions that occurred prior to June 1998 because the plaintiff alleged a course of conduct

---

To the extent *Morgan* holds otherwise, we decline to adopts its
reasoning.  Unlike our cases, *Morgan* appears to give no weight to the
impact of a statute of limitations on informal conciliation processes.
Moreover, we note that the factual posture of the present case
demonstrates a flaw in the reasoning of *Morgan*, which barred
application of the continuing violation doctrine for discrimination and
retaliation claims because those claims were founded on 'discrete
acts.'

*Yanowitz*, 36 Cal. 4th at 1058 n.18.

United States District Court

For the Northern District of California

1  in which the defendant solicited or fabricated negative information, and then used this information to

2  intimidate, disempower, and punish the plaintiff. *Id.* at 1059.  The court found that a reasonable trier

3  of fact could find that the plaintiff "was not on notice that further conciliatory efforts would be

4  futile, until her final attempts to meet with company representatives to discuss the criticism directed

5  at her were finally rebuffed." *Id.*

6  In contrast, the court in *Morgan* found that the continuing violation doctrine did not apply to

7  the plaintiff's retaliation claim.  88 Cal. App. 4th at 67.  There, the plaintiff alleged that he was laid

8  off after filing a grievance claiming racial discrimination.  *Id.* at 57-58.  After being laid off, the

9  plaintiff applied for thirty-two jobs with the University between 1995 and 1996, but was not hired

10  despite having preference for employment on the campus.  *Id.* at 57-58.  The plaintiff then filed a

11  complaint with DFEH in April 1997, alleging that he was denied employment and rehire rights in

12  retaliation for filing a grievance.  *Id.* at 62.  The court found that the continuing violation doctrine

13  did not apply because the unlawful acts were insufficiently similar in kind, as the plaintiff had not

14  alleged a University-wide policy of discrimination or that the individual hiring decisions were

15  related.  *Id.* at 65.  Instead, the hiring decisions were isolated employment decisions "made by

16  different decision makers in unrelated departments of the University regarding positions with

17  varying job requirements." *Id.*  Furthermore, the court found that "each time appellant was informed

18  he was not being hired for a position to which he had applied, he was, or should have been, aware

19  this action might be contrary to his preferential rehire rights." *Id.* at 67.  Thus, each rejection "had

20  the degree of permanence which should trigger an employee's awareness of and duty to assert his . .

21  . rights." *Id.* at 66.

22                   b.   <u>Application</u>

23  In the instant case, Plaintiff's claims concern five events: (1) Plaintiff's forced medical

24  retirement in 2001; (2) Plaintiff's first reinstatement attempt between 2002 and 2003; (3) Sergeant

25  Frankel's informal inquiries reinstating Plaintiff in 2006; (4) Plaintiff's communications with the

26  Human Resources Department regarding reinstatement and reasonable accommodations between

27  2007 and 2008; and (5) Plaintiff's 2009 application.  Plaintiff filed his complaint with DFEH in

28

United States District Court

For the Northern District of California

1    February 2010.  Absent the continuing violation doctrine, Plaintiff's claims concerning events

2    occurring prior to February 2009 would be barred.

3          The Court finds that although Plaintiff may be able to raise an issue regarding whether

4    Defendant's acts were similar in nature, having alleged a pattern of harassing officers and forced

5    disability retirements, Plaintiff cannot demonstrate that the events had not acquired a "degree of

6    permanence."  Considering the twin goals of the continuing violation doctrine–preventing

7    employees from being forced into bringing actions that are unripe for adjudication, and encouraging

8    informal resolution of disputes–BPD's decision to retire Plaintiff and its subsequent decisions to not

9    reinstate Plaintiff were separate, discrete events that were ripe for legal adjudication when they

10    occurred.  Plaintiff alleges that he was forced into medical retirement in 2001.  Gardner Decl. ¶¶ 20-

11    22.  A reasonable person who believed he was being wrongfully forced into retirement because of

12    his medical injury would be aware that his rights were being violated, and could bring suit to protest

13    the forced retirement.  Likewise, Plaintiff sought reinstatement in 2002, but was rejected despite his

14    belief that reinstatement was required under California law.  Gardner Decl. ¶ 26.  At that point,

15    Plaintiff should have–and apparently did–recognize that his rights were being violated, as

16    demonstrated by Plaintiff's petition for a writ of mandate against Defendant in 2003.  Gardner Dep.

17    57:21-58:4.  In 2006, Sergeant Frankel made informal inquiries about reinstating Plaintiff, but was

18    told that Plaintiff was not well-liked by the black command staff and thus reinstatement was

19    unlikely.  Frankel Dep. 37:2-38:5.  Again, this rejection should have put Plaintiff on notice that his

20    rights, if any, were being violated if he believed he was entitled to reinstatement.  Finally, Plaintiff

21    communicated with the Human Resources Department between 2007 and 2008, but was told that

22    Defendant believed it was not obligated to reinstate Plaintiff and that Plaintiff would instead have to

23    go through a new recruitment and examination process.  Gardner Decl. ¶ 30; Hodgkins Decl. ¶¶ 2, 4.

24    Plaintiff himself states that he was confused by this statement, and suspected that they were

25    attempting to further humiliate or discourage him from seeking employment with BPD.  Gardner

26    Decl. ¶ 30.  Given Plaintiff's belief that he was entitled to reinstatement, and his suspicions that

27    Defendant was attempting wrongfully to discourage him from seeking employment, Plaintiff was on

28    notice on his rights were being violated and that his claim was ripe for adjudication.

United States District Court

For the Northern District of California

1   Furthermore, Defendant's actions clearly indicated that they were unwilling to cooperate

2   further with Plaintiff.  Each event involved a final decision to either retire or not reinstate Plaintiff,

3   with no opportunity for further discussion.  While Plaintiff argues that the decision not to rehire or

4   reinstate Plaintiff was not permanent in the sense that BPD could still hire Plaintiff in the future, a

5   final decision was still made to not hire Plaintiff *at that time*.  Docket No. 56 at 17 ("Opp.").

6   Plaintiff himself apparently recognized the futility of informal conciliation, given that Plaintiff took

7   formal legal action in 2003 when he petitioned for a writ of mandate from the state court to require

8   his reinstatement to the BPD.  Gardner Dep. 57:21-58:4.  Thus, unlike in *Richards*, where the court

9   found that the plaintiff and defendant continued to engage in an informal process to address the

10  plaintiff's concerns regarding accommodation, defendant in the instant case ended any informal

11  conciliation process, and plaintiff proceeded to legal action in the state court.  *See Richards*, 26 Cal.

12  4th at 802; *Yanowitz*, 36 Cal. 4th at 1059 (finding that plaintiff was not on notice that further

13  conciliatory efforts would be futile until her attempt to discuss criticisms levied against her was

14  rebuffed in her final meeting with company representatives).

15  Because Defendant's actions had acquired a degree of permanence, the continuing violation

16  doctrine does not apply in the instant case.  Accordingly, Plaintiff may only bring FEHA claims

17  based on Plaintiff's 2009 application, the only event within FEHA's one year statute of limitations.

18  However, this does not necessarily preclude admission of evidence regarding events outside of the

19  statute of limitations probative to Plaintiff's substantive claims; that issue is reserved for trial.  *See*

20  *Cucuzza*, 104 Cal. App. 4th at 1045.

21          2.      42 U.S.C. § 1983 and 42 U.S.C. § 1985 Claims

22  The statute of limitations for § 1983 and § 1985 claims is the forum state's statute of

23  limitations for personal injury actions.  *McDougal v. Cnty. of Imperial*, 942 F.2d 668, 672-73 (9th

24  Cir. 1991).  California has a two-year statute of limitations for personal injury actions that arise on

25  or after January 1, 2003.  Cal. Code Civ. P. § 335.1.  Pursuant to the Supreme Court's decision in

26  *National Railroad Passenger Corp.*, the Ninth Circuit has found that the continuing violation

27  doctrine only applies in § 1983 and § 1985 claims based on hostile work environment.  *See*

28  *Carpinteria Valley Farms, Ltd. v. Cnty. of Santa Barbara*, 344 F.3d 822, 829 (9th Cir. 2003);

1     *Beauregard v. Lewis Cnty.*, No. 06-35878, 329 Fed. Appx. 710, 712 (9th Cir. May 7, 2009).

2 Otherwise, acts occurring outside of the statute of limitations period cannot be used to support

3 claims of constitutional violations. *See Carpinteria Valley Farms*, 344 F.3d at 829.

4          In the instant case, Plaintiff's complaint was filed on June 23, 2010. The statute of

5 limitations bars claims based on events prior to June 23, 2008. Thus, Plaintiff's § 1983 and § 1985

6 claims are limited to the 2009 application process and Defendant's final written denial of Plaintiff's

7 last request for reinstatement in August 2008.

8          3.      <u>State Constitutional Claims</u>

9          Like the statute of limitations for federal constitutional claims, the statute of limitations for

10 state constitutional claims is based on California's statute of limitations for personal injury actions –

11 two years. *See Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1150 (2007).

12 Although the continuing violation doctrine is not limited to hostile work environment claims, for the

13 reasons stated above, the continuing violation doctrine is inapplicable in this case because events

14 prior to June 23, 2008 obtained a degree of permanence. Accordingly, Plaintiff's state constitutional

15 claims are limited to the 2009 application process and Defendant's final written denial of Plaintiff's

16 last request for reinstatement in August 2008.

17 C.     <u>Specific Causes of Action</u>

18          1.      <u>Disability/Medical Condition Discrimination</u>

19              a.      <u>Standard</u>

20          California has adopted the *McDonnell* burden-shifting test for FEHA claims. *See Guz*, 24

21 Cal. 4th at 354. Under this test, the plaintiff has the initial burden of establishing a prima facie case

22 of discrimination, which generally requires evidence that: (1) the plaintiff is a member of a protected

23 class; (2) the plaintiff was qualified for the position he sought or was performing competently in the

24 position he held; (3) the plaintiff suffered an adverse employment action, such as termination or

25 denial of an available job; and (4) some other circumstances that suggest a discriminatory motive.

26 *Id.* at 354-55. Once the plaintiff establishes a prima facie case, a presumption of discrimination

27 arises and the burden shifts to the defendant to demonstrate that the adverse employment action was

28 taken for a legitimate, nondiscriminatory reason. *Id.* at 355-56. The demonstration of a legitimate,

United States District Court

For the Northern District of California

1    nondiscriminatory reason causes the presumption of discrimination to disappear, shifting the burden

2    back to the plaintiff to demonstrate that the proffered reason is mere pretext for discrimination.  *Id.*

3    at 356.  A plaintiff may satisfy this burden by "establish[ing] that he was the victim of intentional

4    discrimination by showing that the employer's proffered explanation is unworthy of credence."

5    *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 143 (2000).  Thus, "evidence of dishonest

6    reasons, considered together with the elements of the prima facie case, may permit a finding of

7    prohibited bias."  *Guz*, 24 Cal. 4th at 356.

8            b.    <u>Application</u>

9            In the instant case, Defendant's primary argument is that Plaintiff's 2009 application was

10   denied because supervisors in BPD's Personnel & Training Unit exercised their discretion to not

11   move Plaintiff's application forward based on direct knowledge of Plaintiff's prior poor work

12   performance.[4]  Motion at 15.  At the hearing on this matter, Defendant argued that because it had

13   presented legitimate, nondiscriminatory reasons for rejecting Plaintiff's 2009 application, summary

14   judgment was warranted pursuant to the California Supreme Court's ruling in *Guz*.

15           In *Guz*, the court held that where a defendant proffers legitimate reasons factually unrelated

16   to prohibited bias, summary judgment is warranted because the legitimate reasons preclude a finding

17   of discrimination.  24 Cal. 4th 358, 362.  However, *Guz* is distinguishable from this case because

18   there, the plaintiff "essentially conceded that the reasons cited by [the defendant] in support of its

19   motion for summary judgment–cost efficiency and concerns about [the plaintiff's department]

20   performance as a unit–*were the true reasons* why [the defendant] decided to eliminate [the plaintiff's

21   department]."  *Id.* at 364.  "Under such circumstances, any independent circumstantial evidence of

22   discrimination is insufficient to raise a rational inference that [the Defendant] acted on grounds of

23   prohibited bias."  *Id.* at 366.

24           In contrast, Plaintiff has introduced evidence directly disputing Defendant's given reasons

25   for not hiring Plaintiff in 2009, and further provides evidence that a reasonable trier of fact could

26   _____

27           [4]  In this motion, Defendant does not dispute whether Plaintiff can make a prima facie case.
     Instead, "[f]or purposes of this motion, and without waiving its right to assert the argument later in
     this litigation, the City assumes Plaintiff can make a *prima facie* case of discrimination with respect
28   to his alleged disability and/or perceived disability."  Motion at 15.

find demonstrates pretext for Defendant's decision not to rehire Plaintiff.  First, Plaintiff disputes whether Plaintiff's reputation was in fact negative.  Opp. at 6-8.  Plaintiff provides depositions from several of Plaintiff's co-workers who describe Plaintiff as professional and courteous, and well-liked by his fellow officers.  *See* Lopes Decl. ¶ 4; Frankel Decl. ¶ 2; Libed Decl. ¶ 3; Reece Decl. ¶¶ 3, 6; Cobert Decl. ¶ 3; Dave Lindenau Decl. ¶¶ 2-3.  These declarations create a dispute over whether Plaintiff in fact had a negative reputation, as it demonstrates that a number of officers who worked closely with Plaintiff though highly of him and believed that he had a good reputation with other officers.  Plaintiff also provides his Performance Appraisals, which do not suggest that Plaintiff was a problem officer but instead praised Plaintiff's professionalism and ability to be a team player.  Docket No. 72, Exhs. 4, 10; Docket No. 73, Exhs. 11-13.  Again, these appraisals contradict Defendant's argument that Plaintiff had a negative reputation, and create a dispute over whether Defendant's refusal to rehire Plaintiff based on his alleged reputation was legitimate.

Second, Plaintiff disputes that Sergeant Schofield and Lieutenant Upson even had the opportunity to form their negative impressions of Plaintiff because neither worked closely with Plaintiff.  Gardner Decl. ¶¶ 16, 19.  Plaintiff specifically denies the hazing incident recounted by Lieutenant Upson, and contends that he only had a limited working relationship with Sergeant Schofield because they worked on different teams with different supervisors.  Gardner Decl. ¶¶ 18, 19.  Again, this statement helps create a dispute over whether the decision not to rehire Plaintiff was based on Plaintiff's actual performance, or an illegal motivation.

Third, Plaintiff disputes that the number of complaints he received was unusual and would have demonstrated that Plaintiff had work performance.  Opp. at 8-9.  Plaintiff worked in the Drug Task Force, which usually resulted in more complaints due to its inherently confrontational nature and the use of the complaint process by drug dealers as retaliation.  Gardner Decl. ¶ 9; Lopes Decl. ¶ 8; Libed Decl. ¶ 4; Reece Decl. ¶ 4.  Although Defendant responds that Plaintiff failed to provide evidence that the City had ever rehired an officer with a sustained excessive force complaint, Defendant does not provide direct evidence that the 2009 decision not to rehire Plaintiff was based on that complaint.  Furthermore, the other officer who was the subject of the same sustained excessive force complaint against Plaintiff was promoted, despite the sustained complaint.  Gardner

United States District Court

For the Northern District of California

1    Decl. ¶ 11.  This suggests that the sustained complaint should not alone have barred Plaintiff's

2    rehiring, as the same complaint did not bar the promotion of Plaintiff's partner.

3         Fourth, Plaintiff alleges that he was given different reasons for Defendant's rejection of his

4    2009 application.  Plaintiff was told that his application was not going forward because the

5    department had a total hiring freeze, which was belied by BPD's hiring of two UC Berkeley Campus

6    Police over the next several weeks, and two more UC Berkeley Campus Police over the next several

7    months.  Gardner Decl. ¶¶ 3-4.  Now, Defendant argues that Plaintiff was not rehired because of his

8    prior performance.[5]  The alleged falsity of this initial reason, followed by Defendant's shifting

9    rationale that Plaintiff was in fact not hired because of his prior reputation or his sustained

10   complaints, also creates a dispute over the reasons underlying the decision to not rehire Plaintiff.

11        Finally, Plaintiff presents evidence of a pattern and policy of discrimination towards medical

12   disabilities and conditions.  For example, several prior BPD employees were medically retired and

13   either had to promise not to seek reemployment with BPD, or were not rehired or reinstated despite

14   their qualifications.  Cheryl Lindenau, a former BPD Dispatch Supervisor, states that she was told

15   that she would not be rehired because of her wrist injury and subsequent surgery.[6]  Docket No. 63 ¶¶

16   2-3 ("Cheryl Lindenau Decl.").  Christine Knowlton states that she was required to sign a document

17   stating that she would resign in order to receive her disability retirement and pension, even though

18   she only intended to medically retire rather than resign.  Docket No. 59 ¶ 1 ("Knowlton Decl.").

19   Sean McCann likewise states that he was compelled to sign a document agreeing to never apply for

20   employment with the City of Berkeley, as part of a Compromise and Release in relation to his

21   medical retirement.  McCann Decl. ¶ 6; Docket No. 98, Exh. B.

22        Plaintiff also alleges other incidents of discrimination against those with medical disability.

23   In Plaintiff's case, he describes incidents where after his injury was aggravated, he was placed on

24   _____

25        [5] In earlier Case Management Conference statements, Defendant does not appear to argue
     that Plaintiff was not hired because of his prior performance.  Instead, Defendant has argued that
26   there was a hiring freeze, and that no officers were hired from the eligibility list Plaintiff was on.
     *See* Docket No. 10 at 4-5; Docket No. 19 at 4; Docket No. 31 at 4-5.

27        [6] Although Defendant correctly points out that Ms. Lindenau appeared to resign for family
     reasons, the issue is whether the decision to not *rehire* Ms. Lindenau was based on medical
28   discrimination.

1    "the notoriously tedious light duty assignment of taking cold reports, called 'TRT,' that was

2    commonly assumed to be such an unpleasant assignment that officers would either try to come back

3    full-duty against their doctor's orders, or accept a disability retirement."  Gardner Decl. ¶ 8; *see also*

4    McCann Decl. ¶ 5.  Plaintiff also claims that he was forced into medical retirement, and that his

5    subsequent attempts at reinstatement were rejected because of discrimination against medical

6    disabilities.  Gardner Decl. ¶¶ 20-22; Frankel Decl. ¶ 3 (stating that Plaintiff's attempt for

7    reinstatement was "thwarted by unjustifiable commentary by former Chief Doug Hambleton about

8    [Plaintiff's] injury, suspicions about his motivation for returning to work, his work history, his

9    reputation, including the statement to me that he thought [Plaintiff's] chances for coming back to

10   work were not good because Hambleton thought that there would be nothing to stop him from

11   coming back, getting re-injured and then going back out on disability retirement at a higher rate of

12   pay.").

13          Taken together, a reasonable trier of fact could find that Defendant's reason for denying

14   Plaintiff's application was pretext for its discrimination against medical disabilities and conditions.

15   Plaintiff has presented evidence that his prior job performance should not have been a bar to his

16   rehiring, as well as evidence of prior discrimination against himself and other BPD employees who

17   were medically disabled.  Even if Plaintiff cannot recover in liability for these past acts, such

18   evidence demonstrates a pattern of behavior that may have influenced Defendant's decision not to

19   hire Plaintiff.  Thus, a triable issue of material fact exists as to whether Defendant's rejection of

20   Plaintiff's 2009 application was based on illegal discrimination.

21          2.      Reasonable Accommodation

22          FEHA prohibits an employer from "fail[ing] to make reasonable accommodation for the

23   known physical or mental disability of an applicant or employee."  Cal. Gov. Code § 12940(m).

24   Because Plaintiff's FEHA claims for events prior to February 2009 are time-barred, Plaintiff must

25   demonstrate that Defendant failed to make reasonable accommodations for Plaintiff during the 2009

26   application process.  Instead, Plaintiff's request for accommodation is limited to a statement on his

27   job application, stating, "Although I was forced to resign from the Berkeley Police Department due

28   to an on-duty injury, I have since rehabilitated myself and am not limited in the way I was

United States District Court

For the Northern District of California

previously.  I will require minimal, if any, accommodations for my previous injury."  Docket No. 48, Exh. O.  Plaintiff presents no evidence that he did in fact require accommodations, which Defendant then denied.  Plaintiff was able to submit his application and complete the Oral Board interview, at which point he was placed on the eligibility list.  Motion at 17.  This was consistent with Defendant's policy of evaluating a candidate's qualifications for a position prior to making any inquiry regarding the candidate's medical condition.  Hodgkins Decl. ¶ 6.  Because Plaintiff makes no showing that Defendant failed to provide reasonable accommodation during the 2009 application process, Defendant's motion for summary judgment is granted as to Plaintiff's reasonable accommodation claim.

### 3. Failure to Engage in a Good Faith Interactive Process

FEHA prohibits an employer from "fail[ing] to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or medical disability or known medical condition."  Cal. Gov. Code § 12940(n).  Although Plaintiff made multiple requests regarding how he might return to work between 2002 and 2008, claims based on events prior to February 2009 are time-barred.  Plaintiff's last request for reinstatement was made in July 2008, and a response to this request was made in August 2008, more than a year prior to Plaintiff's complaint with DFEH.  Hodgkins Decl., Exh. A.  Because Plaintiff makes no showing that Defendant failed to engage in a good faith interactive process within the statute of limitations, Defendant's motion for summary judgment is granted as to this claim.

### 4. Retaliation (Cal. Gov. Code § 12940)

To demonstrate a prima facie case for retaliation, "a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."  *Yanowitz*, 36 Cal. 4th at 1042.  A "protected activity" exists where the plaintiff "has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  Cal. Gov. Code § 12940(h).  Thus, a "retaliation claim may be brought by any employee who has complained of or opposed conduct that

United States District Court

For the Northern District of California

the employee reasonably believes to be discriminatory." *Yanowitz*, 36 Cal. 4th at 1043.  If the defendant offers a sufficient non-retaliatory reason, the plaintiff loses the presumption of retaliation and must prove intentional retaliation.  *Id.*

In the instant case, Plaintiff has not demonstrated that he was engaged in a "protected activity."  Instead, Plaintiff argues that he was engaged in a "protected activity" by receiving a medical retirement.  The act of receiving a medical retirement is not a "protected activity" as required by the statute, as it does not involve complaining of or opposing any discriminatory conduct prohibited by § 12940.  Because Plaintiff cannot identify a "protected activity" as defined by the statute, Plaintiff has not demonstrated a prima facie case for retaliation.  Defendant's motion for summary judgment is granted as to Plaintiff's retaliation claim.

5.    <u>Harassment</u>

FEHA prohibits harassment of an employee or applicant.  Cal. Gov. Code § 12940(j)(1).  To establish a claim for harassment, a plaintiff must demonstrate that: "(1) plaintiff is a member of a protected group; (2) plaintiff was subjected to harassment because he belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." *Huck v. Kone Inc.*, No. C 10-01845 RS, 2011 U.S. Dist. LEXIS 144438, at *32 (N.D. Cal. Dec. 15, 2011) (citing *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 130 (1999)).  In contrast to discrimination claims, "harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives.  Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 63 (1996); *see also Reno v. Baird*, 18 Cal. 4th 640, 645-46 (1998); *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009).  Thus, whereas a discrimination claim could include a personnel decision, a harassment claim must be based on conduct that is avoidable and unnecessary to job performance. *Janken*, 46 Cal. App. 4th at 64.

Plaintiff alleged two harassing acts within the statute of limitations: (1) Defendant forcing Plaintiff to apply rather than recognizing his request for reinstatement, and (2) Defendant's refusal to engage in any kind of dialogue about Plaintiff's request for accommodation.  Gardner Dep. 137:6-

United States District Court

For the Northern District of California

1    18. Neither act is harassment, as hiring decisions are not avoidable and unnecessary to job

2    performance. *See Reno*, 18 Cal. 4th at 646-647. At the hearing on this matter, Plaintiff conceded

3    that it had not demonstrated a claim for harassment. Accordingly, Defendant's motion for summary

4    judgment is granted as to Plaintiff's harassment claim.

5         6.      Failure to Prevent Discrimination

6         FEHA prohibits an employer from "fail[ing] to take all reasonable steps necessary to prevent

7    discrimination and harassment from occurring." Cal. Gov. Code § 12940(k). Thus, a claim of

8    failure to prevent discrimination requires a discriminatory act.

9         In the instant case, Plaintiff has argued that Defendant approved Lieutenant Morizono's and

10   Sergeant Schofield's decision not to rehire Plaintiff, without ensuring that the decision was properly

11   made by examining his oral board score, work history, education, and other information normally

12   considered when determining if an applicant is qualified. Docket No. 76, Exh. 33 39:1-8

13   ("Gustafson Dep."). Defendant's only response is that there is no discriminatory act in this case, and

14   thus Defendant cannot be held liable for failing to prevent discrimination. Motion at 22; Reply at

15   14. As discussed above, a triable issue of material fact exists regarding whether Defendant

16   discriminated against Plaintiff based on Plaintiff's medical injury when it decided not to rehire him.

17   Accordingly, the Court finds that there is a triable issue regarding whether Defendant failed to

18   prevent discrimination, and denies Defendant's motion for summary judgment as to this claim.

19        7.      Violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1985

20        As an initial matter, Defendant argued that Plaintiff's § 1983 and § 1985 claims fail because

21   Plaintiff cannot bring § 1983 and § 1985 claims simultaneous with claims that fall under anti-

22   discrimination statutes. Motion at 23. However, Defendant's case law concerned § 1983 and §

23   1985 claims that were based on violations of the ADA and Title VII. *Holbrook v. City of Apharetta*,

24   112 F.3d 1522, 1531 (11th Cir. 1997) (dismissing § 1983 claim based on a violation of the ADA and

25   the Rehabilitation Act); *Ward v. Coastal Carolina Health Care, P.A.*, 597 F. Supp. 2d 567, 572

26   (E.D.N.C. 2009) (stating that § 1985 claim cannot be used to redress deprivation of Title VII rights).

27   In the instant case, Plaintiff is not basing his claims on statutory rights, but on due process and equal

28   protection. *Compare Marizono v. Cnty. of Marin*, No. C-10-2740 EMC, 2010 U.S. Dist. LEXIS

United States District Court

For the Northern District of California

10595, at *18 (Oct. 14, 2010) (rejecting Defendant's motion to dismiss because the case did not involve a § 1983 claim based on the ADA, but a § 1983 claim based on the due process clause).  The Court rejects Defendant's argument that Plaintiff's § 1983 and § 1985 claims fail because Plaintiff also brought FEHA claims, as Plaintiff's federal claims are not based on FEHA but on the due process and equal protection clauses.

As to the substantive merits of Plaintiff's § 1983 and § 1985 claims, Defendant does not discuss Plaintiff's equal protection claims but limits its challenge to Plaintiff's due process claims. In order to demonstrate a due process clause, the plaintiff must establish that he or she has a protected property interest.  "[P]roperty interests are not created by the Constitution, but rather by 'existing rules or understandings that stem from an independent source such as state law." *Nunez v. City of Los Angeles*, 147 F.3d 867, 872 (9th Cir. 1998).  For example, "[i]n California, the terms and conditions of public employment are generally fixed by statute, rules or regulations creating it, not by contract (even if one is involved)." *Id.*

In the instant case, Plaintiff argues that he has a legally protected property interest in reinstatement, such that Defendant was required to reinstate Plaintiff once he was medically cleared. Opp. at 20.  Plaintiff first argues that California Government Code § 21192 requires mandatory reexamination upon a medical retiree's request for reinstatement, and that California Government Code § 21196 states: "The board may reinstate a person from retirement upon (a) his or her application to the board for reinstatement and (b) the determination of the board that his or her age at the date of application for reinstatement is at least six months less than the age of compulsory retirement."  However, neither statute creates a mandatory requirement that once a medical retiree is medically cleared, he is entitled to reinstatement.  The statutes use permissive language, stating that the board "*may*" reinstate a person from retirement.  The statute does not state that the board "*must*" or "*shall*" reinstate a person from retirement.[7]

Nor do Plaintiff's other authorities support Plaintiff's position that reinstatement is mandatory.  The CalPERS guide does not state that reinstatement is mandatory; furthermore, even if

---

[7] Notably, Plaintiff's 2003 petition for a writ of mandate appeared to make similar arguments, which the court rejected.

1    it did, the document is not binding as "statements in this booklet are general . . . . If there is a

2    conflict between the law and this booklet, any decisions will be based on the law and not this

3    booklet." Docket No. 74, Exh. 25. As for the League of California Cities' Summary of Existing

4    Policy and Guiding Principles, the document only states that it *supports* a policy requiring

5    mandatory reinstatement for employees certified able to work by medical exam. Docket No. 75,

6    Exh. 28 at 2. The policy appears to be a set of recommendations and does not impose legal duty,

7    and thus does not alone create a property right to reinstatement.

8         Plaintiff has failed to demonstrate that he had a mandatory right to reinstatement. Without

9    establishing a property right in reinstatement, Plaintiff cannot demonstrate that there was a due

10   process violation based on Defendant's denial of reinstatement in August 2008. Plaintiff makes no

11   arguments that Defendant was required to rehire him based on the 2009 application. Accordingly,

12   Defendant's motion for summary judgment is granted as to Plaintiff's § 1983 and § 1985 claims

13   based on the due process clause. As Defendant makes no argument regarding Plaintiff's claims

14   based on the equal protection clause, Defendant has not satisfied its burden of demonstrating that no

15   claim based on the equal protection clause exists.

16        8.    Violation of California Constitution, Art. I, § 7

17        California Constitution Article I, § 7 states that: "A person may not be deprived of life,

18   liberty, or property without due process of law or denied equal protection of the laws . . . ." Cal.

19   Const., Art. I § 7. Like Plaintiff's § 1983 and § 1985 claims, Plaintiff's California constitutional

20   claims are based on a deprivation of due process and equal protection. Again, Defendant has limited

21   its challenge to Plaintiff's due process claims, arguing that Plaintiff has not demonstrated that

22   Defendant deprived Plaintiff a protected property right. Opp. at 25. As above, to the extent that

23   Plaintiff argues that he was entitled to reinstatement, Plaintiff failed to identify any authority

24   creating a right to reinstatement. Accordingly, Plaintiff's claim based on the due process claim fails,

25   and Defendant's motion for summary judgment is granted as to Plaintiff's California constitutional

26   claims based on deprivation of due process. Defendant has not met its burden of establishing that

27   Plaintiff has no claim based on equal protection.

28

**United States District Court**
For the Northern District of California

### III.   <u>CONCLUSION</u>

For the reasons stated above, the Court **PARTIALLY GRANTS** Defendant's motion for summary judgment.  Defendant's motion for summary judgment is **GRANTED** as to Plaintiff's claims for: (1) reasonable accommodation; (2) failure to engage in a good faith, interactive process; (3) retaliation; (4) harassment; (5) § 1983 and § 1985 claims based on the due process clause; and (6) California constitutional claims based on deprivation of due process.  Defendant's motion is **DENIED** as to Plaintiff's claims for:  (1) discrimination under FEHA for the 2009 denial of Plaintiff's application; (2) failure to prevent discrimination under FEHA for the same conduct; (3) § 1983 and § 1985 claims based on equal protection for the 2008 and 2009 denials; and (4) California constitutional claims based on equal protection for the same conduct.

This order disposes of Docket No. 41.


IT IS SO ORDERED.


Dated:  January 17, 2012

_____
EDWARD M. CHEN
United States District Judge